[Cite as *State v. Michel*, 2011-Ohio-2015.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

     Appellee

v.

DONALD R. MICHEL, JR. dba
DBS, D & D VENDING, D & K VENDING
AND XYZ VENDING

     Appellant

C.A. No.      25184


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CR 07 03 0648 (A)

DECISION AND JOURNAL ENTRY

Dated: April 27, 2011

---

MOORE, Judge.

{¶1} Appellant, Donald Michel, appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} Donald Michel owned and operated arcade facilities, including a business establishment at 738 E. Archwood Avenue that contained Jackpots Instant Bingo as well as tanning beds. Camp Quality was a national charity with a 501(c)(3) tax exemption and was a service organization authorized to receive donations under Ohio's gaming laws. Camp Quality received proceeds from Michel's arcade facilities.

{¶3} In early 2003, Norton Police Sergeant John Dalessandro was generally investigating arcade-type business facilities. In the course of visiting these types of facilities, he visited a store owned by Michel. He explained to Michel that he was going to speak with the

Attorney General Gambling Task Force regarding the legality of the machines that were in Michel's arcade facility. After speaking with the Gambling Task Force, Sergeant Dalessandro learned that in order for the games to be legal, the games had to be games of skill and not games of chance. Sergeant Dalessandro advised Michel that a representative from the Attorney General's Office told him the games may be legal, but that the matter would be forwarded to the Gambling Task Force for further determination.

{¶4} Akron Police Sergeant Dominic Avellino interviewed the director of Camp Quality and determined that, in his opinion, the organization did not qualify as a service organization. Because of this determination, he concluded that Michel could not conduct charitable gambling under the Camp Quality charity. Sergeant Avellino and Lieutenant James Phister, went to Michel's store on Archwood Avenue and informed him of this determination and ordered him to close down immediately. He was also told to leave the machines at the location so that the officers could return at a later date to obtain payout percentage information from the machines.

{¶5} When law enforcement officers returned four days later, the machines were gone and there was nothing left in the store. The machines were eventually recovered at another business owned by Michel. The motherboards of the machines had been removed.

{¶6} On March 6, 2007, Michel was indicted by the Summit County Grand Jury for engaging in a pattern of corrupt activity, money laundering, forgery, tampering with evidence, gambling and illegal lottery. On September 14, 2007, Michel filed a motion to dismiss on the grounds of "selective prosecution." Following an evidentiary hearing, the trial court granted the motion and the State appealed to this Court. On February 4, 2009, this Court entered an opinion reversing the trial court's dismissal and ordering the case remanded for trial.

{¶7} On August 24, 2009, a jury trial commenced in the trial court which continued until August 29, 2009. During the trial, the felony counts of forgery, as well as several misdemeanor counts of gambling, and a single count of illegal lottery, were dismissed upon motion by Michel. On September 1, 2009, the jury found Michel guilty of one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), a felony of the first degree, one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree, and nine counts of money laundering in violation of R.C. 1315.55(A)(1)/(2), a felony of the third degree. Michel was also found guilty of criminal forfeiture specifications to each count.

{¶8} On October 20, 2009, following a presentence investigation by the Adult Probation Department, the trial court suspended a three-year period of incarceration, ordered all specification properties forfeited, and ordered Michel to complete three years of community control.

{¶9} Michel timely filed a notice of appeal. He raises six assignments of error for our review.

## II.

### ASSIGNMENT OF ERROR I

"THE COURT COMMITTED PREJUDICIAL ERROR WHEN IT OVERRULED [MICHEL'S] MOTION FOR JUDGMENT OF ACQUITTAL UNDER CRIMINAL RULE 29, AS IT RELATED TO COUNT 11, TAMPERING WITH EVIDENCE, BECAUSE THE ORDERS AND ACTIONS OF THE POLICE AUTHORITY WERE UNLAWFUL AND UNCONSTITUTIONAL."

{¶10} In his first assignment of error, Michel contends that the trial court erred when it overruled his Crim.R. 29 motion for tampering with evidence because the orders and actions of the police authority were unlawful and unconstitutional. We do not agree.

{¶11} Michel argues that the actions of the police authority were unlawful or unconstitutional and, therefore, the trial court should have granted his Crim. R. 29 motion. Specifically, Michel argues that the police did not have the authority to command Michel to close his business and order him not to move the machines. The trial court agreed that the police did not have the authority to do so. However, Michel offers no explanation and cites no authority for how a mistaken legal conclusion reached by a police officer during his investigation requires the court to grant his motion for acquittal with regard to the tampering with evidence charge. Instead he simply states that he cannot be guilty as a matter of law.

{¶12} A motion pursuant to Crim.R. 29 at the close of the case tests the sufficiency of the evidence presented by the state. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production. To determine whether the evidence in a criminal case was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.

{¶13} Michel was convicted of tampering with evidence in violation of R.C. 2921.12(A)(1), which provides:

> "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

"(1)Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]"

{¶14}  Sergeant Avellino testified that, on February 14, 2003, he and Lieutenant Phister went to Michel's Jackpots Instant Bingo store, located on Archwood Avenue, and informed him that he could not conduct charitable gambling under his purported charity and commanded him to close down immediately.  Sergeant Avellino further testified that Michel was told to leave the machines at the location because law enforcement officers needed to return at a later date to obtain payout percentage information from the machines.

{¶15}  Sergeant Avellino attested that when law enforcement officers returned several days later with a search warrant, the machines had been removed and there was nothing left in the store.  Detective Dan Hudnall of the Akron Police Department similarly testified that on February 18, 2003, a search warrant was executed at Michel's Jackpots Instant Bingo store.  When law enforcement officers entered the business, they discovered that the machines were gone and the facility was essentially an empty storefront.  Detective Hudnall testified that the machines were eventually recovered at another business owned by Michel, called Cheezy Charly's, which was located in Barberton.  The motherboards of the machines had been removed.

{¶16}  While the evidence of tampering with evidence is circumstantial in that no one saw Michel move the machines or remove the motherboards, circumstantial and direct evidence "possess the same probative value[.]"  *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus.  "Furthermore, if the State relies on circumstantial evidence to prove any essential element of an offense, it is not necessary for 'such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.'  (Internal quotations omitted.)"  *State v. Tran*, 9th

Dist. No. 22911, 2006-Ohio-4349, at ¶13, quoting *State v. Daniels* (June 3, 1998), 9th Dist. No. 18761, at *2. Days before the officers executed the search warrant at Michel's arcade facilities, Michel had been interviewed regarding the legality of the machines. At the time, Michel had control over both the machines and the premises of the arcade facilities. Officers eventually recovered the machines at another arcade facility owned and operated by Michel. The motherboards had been removed, destroying information that he had been explicitly told was pertinent to the police investigation.

{¶17} Michel argues that the order by the police to shut down the business and to not move the machines was unlawful. He contends that as a result, the court erred in denying his motion for acquittal. The argument is not well taken. The facts in the record indicate that the machines were not only moved, but that the motherboards were in fact removed, preventing the officers from obtaining payout percentage information. This conduct went beyond the parameters of the alleged unlawful and unconstitutional police orders.

{¶18} The language of the statute makes it a crime to conceal or remove a "thing" with "purpose to impair its value or availability as evidence in [a] proceeding or investigation." R.C. 2921.12(A)(1). "For something to be considered evidence under the statute, it is only required that the State prove that the object of the tampering was of value in either a proceeding or an investigation." *State v. Rardon*, 9th Dist. No. 24478, 2009-Ohio-3361, at ¶11. Here, the officers testified that the machines, and particularly the motherboards, were of value because they contained the payout percentage information. The officers informed Michel that they would return to obtain this information. "Attempting to impair the availability of a piece of evidence that is within the scope of an on-going investigation is a violation of R.C. 2921.12(A)(1)." Id.

{¶19} Accordingly, we conclude that the jury could reasonably infer from both the direct and circumstantial evidence, that Michel knew, or at least should have known, that an official investigation was in progress or was about to be or likely to be instituted, that he removed and altered the machines, and that he did so with the purpose to impair their value or availability as evidence in such a proceeding or investigation. Michel's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

"[MICHEL] WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL BY THE TRIAL COURT'S REFUSAL TO INSTRUCT THE JURY ON THE DEFENSE OF ADVICE OF COUNSEL."

{¶20} In his second assignment of error, Michel contends that he was denied due process of law and a fair trial when the trial court refused to instruct the jury on the defense of advice of counsel.

{¶21} It is important to note that Michel failed to object to the jury instructions during trial. A review of the transcript shows that prior to closing arguments, the trial court discussed generally with the parties the jury instructions that would be given to the jury. Defense counsel acknowledged that he had filed a request for written instructions on advice of counsel with the court and that the court had overruled this request. The trial court confirmed that counsel had requested a specific instruction, and that it had overruled the request, but was permitting Michel to argue the exception to the jury. The court said it was "not going to be given as a specific instruction." There was no objection raised by defense counsel.

{¶22} Crim.R. 30(A) provides, in pertinent part: "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the

objection." Crim R. 30(A). Michel's failure to object to the jury instructions forfeits all challenges except plain error. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, at ¶52, citing *State v. Underwood* (1983), 3 Ohio St.3d 12, syllabus. However, this court will not sua sponte undertake a plain-error analysis if a defendant fails to do so. See *State v. Hairston*, 9th Dist. No. 05CA008768, 2006-Ohio-4925, at ¶11. As Michel did not assert plain error, we will not undertake such analysis. His second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

"THE JURY'S FINDING THAT [MICHEL'S] ARCADES WERE NOT SKILL-BASED AMUSEMENT MACHINES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶23} In his third assignment of error, Michel contends that the jury's finding that the machines in his arcade were not skill-based amusement devices was against the manifest weight of the evidence. We do not agree.

{¶24} Michel's assignment of error provides a roadmap for the court and directs our analysis of the trial court's judgment. See App.R. 16. However, Michel has raised several other grounds for reversal under this assignment of error beyond its stated assignment that the jury's finding that the machines in his arcade were not skill-based amusement devices was against the manifest weight of the evidence. Pursuant to App.R. 12(A)(2) and App.R. 16(A), we confine our review to Michel's argument concerning whether the jury's finding was against the manifest weight of the evidence, as this is the argument set forth as Michel's assignment of error.

{¶25} When a defendant asserts that his conviction is against the manifest weight of the evidence,

"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be

reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.

{¶26} Michel was convicted of nine counts of money laundering. The predicate offense for each of the money laundering counts was illegal gambling. In addition, Michel was convicted of one count of engaging in a pattern of corrupt activity, a felony of the first degree. The predicate acts for this charge were tampering with evidence, gambling, and money laundering. Michel argues that he "cannot be guilty of Money Laundering if the financial transactions did not involve illegal gambling proceeds." Similarly, Michel argues that he "cannot be guilty of Engaging In a Pattern of Corrupt Activity if he is not guilty of the predicate offenses of Tampering, Gambling, and Money Laundering." He cites no authority for either of these arguments.

{¶27} With regard to the issue at hand, whether the jury's finding that the machines in his arcade were not skill-based amusement devices was against the manifest weight of the evidence, the State and Michel each presented an expert witness. R.C. 2915.01(AAA)(2) states that a device shall not be considered a "skill-based amusement machine" and shall instead be considered a "slot machine" if "[t]he outcome of the game * * * can be controlled by a source other than any player playing the game." R.C. 2915.01(AAA)(2)(c).

{¶28} A review of the record shows that Daryl Robert Sertell testified as an expert on behalf of the State. He explained to the jury that the three machines at issue in this case, Hot 7s, Golden Treasure Island, and Captain Cannon, each had what he called a "morphed" icon. He explained that this is utilized to deliver an outcome decided by a computer rather than an outcome that might have been achieved by the player. As a result, Sertell concluded that these

games were each games of chance as opposed to games of skill because the customer's skill had no effect on the outcome.

{¶29} Thomas Fricke, a consultant specializing in studies of the law governing location-based amusement and gaming, testified as an expert on behalf of the defendant. He testified to the process of "human factor analysis." His tests were conducted in 2002 and 2006. He began by covering the screen of the machine, turning off the sound, and operating the machine in a "haphazard way" so that he could establish the "constant." The constant was the average loss or gain of credits per single play. He further testified:

> "Once you've determined that with a blindfold, now go out and find somebody who is an aficionado of Hot Sevens or Golden Treasure Island, whatever game you're testing. Come on in here. We'll give you all kinds of credits. Play for an hour. Let's see how well you do.

> "At the end of the same period of time, you measure your constant, the average loss or gain of credits per single play made. Well, if this were a game of chance, you shouldn't be able to tell any difference, especially if you test in large numbers. If the player has any influence on the outcome of that session of game play, the influence ought to be reflected in the performance measured by the average loss of credits or gain of credits during the hour, for a single play."

After this, he would also bring in someone who had never played the games before to measure the same constant once again, the average loss or gain of credits per play.

{¶30} He averred that if it were a "skill-based game" such that the outcome was controlled by the player, then hypothetically the data should show a low score during the blind or haphazard play, a much higher score for the aficionado, and a score with a trend of improvement due to the learning curve for the new player. He found that the results were "materially and substantially and measurably affected by the actions of the player" and, therefore, the outcome of the game is not determined wholly or largely by chance.

{¶31} Tangie Vincent, the grandson of Michel, testified that he observed the use of the machines and that as people continued to use the games they became better at the games. Denny Zbinden, a former codefendant in the case, invested money in Michel's arcades. He told the jury that he was not an expert in gambling. He testified that reaction time affected the Hot 7s game, and thus experience does have an impact on performance. Michel also testified that if people had a desire to learn the game, their performance would improve. If the people had no desire to learn, and instead were "button pushers" who would simply push the button, and then stop the button, then their performance did not improve. Zbinden and Michel both testified that they had never heard of the term "morphing" as it was used by the State's expert. Finally, Attorney David Kopech testified and "explained that if morphing was present, it could either enhance, reduce or have no effect upon winning."

{¶32} The jury was confronted with conflicting evidence, and in particular with competing expert opinions. This Court has held that, "in reaching its verdict, the jury is free to believe all, part, or none of the testimony of each witness." *Prince v. Jordan*, 9th Dist. No. 04CA008423, 2004-Ohio-7184 at ¶35, citing *State v. Jackson* (1993), 86 Ohio App.3d 29, 33. Furthermore, "[t]he weight to be given the evidence and the credibility of the witness[es] are primarily for the trier of the facts[;]" in this case, the jury. *State v. Jackson*, 86 Ohio App.3d at 32, citing *State v. Richey* (1992), 64 Ohio St.3d 353, 363. Thus, "'[t]he jury did not lose its way simply because it chose to believe the State's version of the events, which it had a right to do.'" *State v. Feliciano*, 9th Dist. No. 09CA009595, 2010-Ohio-2809, at ¶50, quoting, *State v. Morten*, 2d Dist. No. 23103, 2010-Ohio-117, at ¶28. Here, the jury was faced with weighing the conflicting expert opinions and determining, based upon the respective expert's data and reasoning, which view was more persuasive. Based upon a thorough review of the evidence, we

cannot say that the jury's resolution of the conflict was unreasonable. Michel's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

"THE JURY VERDICT OF GUILTY TO THE SPECIFICATION OF FORFEITURE MUST BE REVERSED AS A MATTER OF LAW BECAUSE THE JURY'S VERDICT OF GUILTY TO THE PREDICATE OFFENSE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

## ASSIGNMENT OF ERROR V

"THE JURY VERDICT OF GUILTY TO MONEY LAUNDERING MUST BE REVERSED AS A MATTER OF LAW BECAUSE [MICHEL] IS NOT GUILTY OF GAMBLING."

## ASSIGNMENT OF ERROR VI

"THE JURY VERDICT OF GUILTY TO ENGAGING IN A PATTERN OF CORRUPT ACTIVITY MUST BE REVERSED AS A MATTER OF LAW BECAUSE [MICHEL] IS NOT GUILTY OF THE PREDICATE OFFENSE OF GAMBLING, TAMPERING WITH EVIDENCE, AND MONEY LAUNDERING."

{¶33} This Court's resolution of the third assignment of error is dispositive, rendering the remaining assignments of error moot, so they will not be addressed. See App.R. 12(A)(1)(c).

III

{¶34} Michel's first, second, third, fourth, fifth and sixth assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

BELFANCE, P. J.
CARR, J.
CONCUR

APPEARANCES:

JAMES L. BURDON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.