[Cite as *State v. Strehl*, 2012-Ohio-119.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 10CA0063-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOSEPH L. STREHL, III | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 09CR0381 |

DECISION AND JOURNAL ENTRY

Dated: January 17, 2012

---

BELFANCE, Presiding Judge.

{¶1} Joseph Strehl appeals his conviction for operating a vehicle while intoxicated. For the reasons set forth below, we affirm.

I.

{¶2} A van nearly struck Alicia Hassman's car. She watched in her rearview mirror as the van jumped the curb and then reentered the roadway. Ms. Hassman called 911 to report the van's erratic driving.

{¶3} Bernard Lyons was sitting on his porch a few miles from where Ms. Hassman reported seeing the swerving van when he saw the front end of a van plow through some high grass at the end of his yard. The engine of the van revved a couple of times as though the driver was trying to extract it from the weeds, but the van did not move. Mr. Lyons saw the driver, whom he later identified as Mr. Strehl, get out of the van and stumble around. Ms. Lyons called 911 to report the accident. Trooper Steven Robison arrived at the scene and asked Mr. Strehl to

fill out a crash report. The crash report was illegible, and Mr. Strehl was also unable to read it back to the officer. After performing a field sobriety test, which indicated six out of six clues for intoxication, the trooper arrested Mr. Strehl for operating a vehicle while intoxicated

{¶4} Following a bench trial, the trial court found Mr. Strehl guilty of operating a vehicle while intoxicated. It sentenced Mr. Strehl to 180 days in jail and suspended his license for 6 months. Mr. Strehl has appealed, raising three assignments of error for review. To facilitate our discussion, we have rearranged his assignments of error.

II.

### ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS WHERE THE LAW ENFORCEMENT OFFICERS TOOK CUSTODY OF THE APPELLANT, PLACING HIM IN THE BACK SEAT OF THE POLICE VEHICLE WITH AN ADMITTED INTENT TO KEEP HIM FROM LEAVING WITHOUT FIRST READING APPELLANT HIS MIRANDA (sic) RIGHTS."

{¶5} Mr. Strehl argues that the trial court erred when it denied his motion to suppress because he was in custody when Trooper Robison had him sit on the edge of the back seat of the trooper's cruiser to fill out an accident report. We disagree.

{¶6} Generally, review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, at ¶ 8. Thus, we defer to the trial court's findings of fact if they are supported by competent, credible evidence and review its application of the law to the facts de novo. *State v. Metcalf*, 9th Dist. No. 23600, 2007–Ohio–4001, at ¶ 6.

{¶7} Following the suppression hearing, the trial court made the following findings of fact: (1) Trooper Robison was dispatched to the accident site involving Mr. Strehl's van; (2) upon arrival, Trooper Robison asked Mr. Strehl to approach him and observed that Mr. Strehl

was unsteady on his feet, and was staggering and stumbling; (3) as Trooper Robison asked Mr. Strehl what had happened, Trooper Robison noticed that Mr. Strehl had bloodshot eyes and had a strong odor of alcohol about his person; (4) Trooper Robison noticed that, when Mr. Strehl tried to fill out a statement concerning the accident, his writing was illegible and since his writing was illegible, he asked Mr. Strehl to read the statement to him;  (5) Mr. Strehl was unable to read his own statement back to the Trooper; (6) as Mr. Strehl was filling out the accident statement, he was in the back seat of the trooper's cruiser, the door was open and Mr. Strehl had his body on the cruiser's seat, but his legs and feet were outside of the vehicle; (7) after Mr. Strehl had attempted to fill out the accident statement, Trooper Robison performed the horizontal nystagmus test, a field sobriety test, on Mr. Strehl and observed six out of six clues for intoxication.

{¶8}    Mr. Strehl has not challenged any of the trial court's findings of fact, which, upon a review of the record from the suppression hearing, are supported by competent, credible evidence.  Based upon the facts adduced during the suppression hearing, the trial court concluded that Mr. Strehl was not in custody as Trooper Robison was investigating the crash, and that Mr. Strehl's initial detention was a permissible investigatory stop in keeping with *Terry v. Ohio*, 392 U.S. 1 (1968).

{¶9}    We observe that, in his merit brief, Mr. Strehl does not identify precisely when he was subjected to a custodial interrogation, nor does he identify what evidence was obtained by virtue of the alleged custodial interrogation.  The State contends that Mr. Strehl was not in custody so as to trigger the requirement of providing *Miranda* warnings but, rather, was detained as part of an investigatory stop.  *See United States v. Cortez*, 449 U.S. 411, 417 (1981) ("An investigatory stop must be justified by some objective manifestation that the person stopped is,

or is about to be, engaged in criminal activity."). Mr. Strehl does not dispute that as a consequence of being dispatched to the scene of the accident, Trooper Robison could briefly detain Mr. Strehl to ascertain what occurred and that from the moment the trooper arrived at the scene, he made numerous observations suggesting that Mr. Strehl might be intoxicated.

{¶10} The Supreme Court of the United States has held that, while traffic stops are seizures within the meaning of the Fourth Amendment, a traffic stop alone does not render the person in "'custody'" within the meaning of *Miranda*. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). This is because "a traffic stop is presumptively temporary and brief * * *" and because it occurs within the public view. *Id*. at 437-438. Similarly, while a driver may not leave the scene of an accident, *see* R.C. 4549.02, any routine questioning by a police officer occurs in the public view and is presumptively temporary and brief.

{¶11} Notwithstanding, the question of whether a person is in custody and subjected to custodial interrogation involves a case-by-case inquiry. "In order to determine whether a person is in custody for purposes of receiving *Miranda* warnings, courts must first inquire into the circumstances surrounding the questioning and, second, given those circumstances, determine whether a reasonable person would have felt that he or she was not at liberty to terminate the interview and leave." *State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, at ¶ 27, citing *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). "Once the factual circumstances surrounding the interrogation are reconstructed, the court must apply an objective test to resolve 'the ultimate inquiry' of whether there was a "'formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.'" *Hoffner* at ¶ 27, quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983), quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

{¶12} In the case before us, there was no evidence of a custodial interrogation in an attempt to obtain incriminating evidence beyond the standard fact finding process at an accident scene. Nor was Mr. Strehl "subjected to restraints comparable to those associated with a formal arrest." *Berkemer* at 441. Accordingly, based on the record before us, we conclude that *Miranda* warnings were not required. *See, e.g., State v. Garland*, 116 Ohio App.3d 461, 470 (12th Dist. 1996) (*Miranda* warnings are not required at the scene of accident because "the questioning constitute[s] on-scene questioning done as part of the normal fact-finding process and not custodial interrogation."); *State v. Brown*, 12th Dist. No. CA2002-11-290, 2004-Ohio-503, at ¶ 18, quoting *Garland* at 470 ("'[Q]uestioning of the accused at the scene of an automobile accident [is] only an attempt to elicit basic facts relative to the accident investigation.'").

{¶13} In his merit brief, Mr. Strehl suggests that the fact he was sitting on the back seat of Trooper Robison's cruiser meant that he was in custody. However, that fact alone is not dispositive of whether Mr. Strehl was in custody. *See, e.g., State v. Burke*, 9th Dist. No. 96CA0074, 1997 WL 440927, at *3 ("We do not agree that being questioned about an accident while sitting in a police car would be considered 'custody' to a reasonable person."); *State v. Warrell*, 41 Ohio App.3d 286, 286-287 (9th Dist. 1987) (concluding that "a reasonable man in defendant's position [(having returned to the scene of an accident)] would believe that the officer's purpose in detaining him was only to complete an accident report[]"). Trooper Robison was investigating an accident and asked Mr. Strehl questions "to elicit basic facts relative to the accident investigation." (Internal quotations and citations omitted.) *Brown* at ¶ 18. Mr. Strehl filled out a standard accident report while sitting on the edge of the back seat of Trooper Robison's cruiser with the door ajar and his feet on the ground. Given the facts presented during

the suppression hearing, the trial court could properly conclude that Mr. Strehl was not in custody at that time. Notwithstanding, we note that Mr. Strehl has also failed to identify what statements or evidence should have been suppressed as a result of any alleged custodial interrogation, thus we cannot discern whether Mr. Strehl suffered any prejudice.

{¶14} In light of the above, we cannot say that the trial court erred when it determined that Mr. Strehl was not in custody when he filled out the accident form and, therefore, his *Miranda* rights were not implicated. His first assignment of error is overruled.

### ASSIGNMENT OF ERROR III

"THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS, WHERE THE LAW ENFORCEMENT OFFICERS WHO ARRESTED APPELLANT DID NOT HAVE JURISDICTION TO DO SO SINCE APPELLANT WAS NOT ON STATE PROPERTY."

{¶15} In Mr. Strehl's third assignment of error, he argues that Trooper Robison lacked authority to arrest him, and, therefore, the arrest violated his Fourth Amendment rights. We disagree.

{¶16} Mr. Strehl never raised the issue of Trooper Robison's authority to arrest him before the trial court, and, as a result, he forfeited all but plain error on appeal. *State v. Smallwood*, 9th Dist. No. 24282, 2009-Ohio-1987, at ¶ 11. *See also* Crim.R. 52(B).

{¶17} Generally, to establish plain error,

"there must [first] be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights[]' [to the extent that it] * * * affected the outcome of the trial." *State v. Hardges*, 9th Dist. No. 24175, 2008–Ohio–5567, at ¶ 9, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶18} However, Mr. Strehl has not actually developed a plain error argument in his brief, App.R. 16(A)(7); instead, he makes a plain error argument for the first time in his reply

brief. Thus, Mr. Strehl's plain error argument is not properly before us. *See* Loc.R. 7(D); *see also Willet v. Willet*, 9th Dist. No. 22167, 2005-Ohio-342, at ¶ 8, fn. 1 (declining to consider a plain error argument raised for the first time in the appellant's reply brief because the reply brief is "merely an opportunity to reply to the brief of the appellee") (Internal quotations and citations omitted.).

{¶19} In this case, Mr. Strehl does not argue that his initial detention was improper nor that his arrest was not supported by probable cause. Trooper Robison arrested Mr. Strehl for operating a vehicle while intoxicated, a violation of R.C. 4511.19, which is a "law[] relating to the operation and use of vehicles on the highways * * *." R.C. 5503.02(A). Even assuming that Trooper Robison violated R.C. 5503.02, *but see State v. Murchison*, 72 Ohio App.3d 840, 842-843 (10th Dist. 1991) (construing R.C. 5503.02(A) to give the state highway patrol "the authority to arrest for traffic violations occurring on city streets, city avenues, city boulevards, city courts, and any other term utilized to designate a road[]"), Mr. Strehl has not pointed to any authority that suggests the proper remedy for a violation of R.C. 5503.02 would be to grant his motion to suppress. See *State v. Jones*, 121 Ohio St.3d 103, 2009-Ohio-316, at ¶ 20 (concluding that "[t]he fact that [an officer] [i]s outside his jurisdiction * * * is irrelevant to the Fourth Amendment analysis[]" and that the proper inquiry is whether the stop itself was constitutional).

{¶20} Accordingly, we conclude that Mr. Strehl has failed to demonstrate that the trial court committed plain error when it denied his motion to suppress. His third assignment of error is overruled.

## ASSIGNMENT OF ERROR II

"THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT THE JUDGE'S GUILTY VERDICT AND THE CONVICTION THEREFORE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶21}** Mr. Strehl argues that the State failed to produce sufficient evidence to support a finding that he drove his van while under the influence of alcohol. He also argues that his conviction was against the manifest weight of the evidence. We disagree.

SUFFICIENCY

**{¶22}** "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams,* 9th Dist. No. 24731, 2009–Ohio–6955, at ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins,* 78 Ohio St.3d at 390 (Cook, J., concurring). In reviewing the evidence, we do not evaluate credibility and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The State's evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

**{¶23}** The trial court convicted Mr. Strehl of violating R.C. 4511.19(A)(1)(a), which provides that "[n]o person shall operate any vehicle * * * within this state, if, at the time of the operation, * * * [t]he person is under the influence of alcohol * * *." According to the call logs from the Medina County Sheriff's department, Ms. Hassman called 911 to report a van that had nearly hit her car. Approximately three minutes later, according to the call logs, the Medina County Sheriff's department received a second 911 call from Mr. Lyons, who reported that a van had just crashed into his front yard.

**{¶24}** According to Mr. Lyons, he observed Mr. Strehl exit the van from the driver's side and that, based on how Mr. Strehl was moving, he thought Mr. Strehl appeared intoxicated. Mr. Lyons testified that he spoke with Mr. Strehl a few minutes later and that Mr. Strehl smelled

of alcohol and had glassy eyes. Mr. Lyons also testified that he watched Mr. Strehl stumble around his front yard. According to Mr. Lyons, his interaction with Mr. Strehl reinforced his opinion that Mr. Strehl was intoxicated.

{¶25} Trooper Robison also testified that he observed behavior from Mr. Strehl that led him to believe that Mr. Strehl was intoxicated. According to the trooper, Mr. Strehl's eyes were glassy and bloodshot and he had trouble maintaining his balance. Trooper Robison testified that he attempted to perform the horizontal nystagmus test, a standard field sobriety test, on Mr. Strehl; however, Mr. Strehl failed to follow Trooper Robison's instructions. According to Trooper Robison, he was still able to discern six indicators from the testing that indicated that Mr. Strehl was intoxicated. Trooper Robison asked Mr. Strehl if he had been drinking, and Mr. Strehl said that he had had "'[t]hree to four beers * * * [a] little bit ago * * *.'"

{¶26} Trooper Robison had Mr. Strehl fill out an accident report at the scene; however, Trooper Robison could not read what Mr. Strehl wrote. When he asked Mr. Strehl to read it, Mr. Strehl was unable to discern his own writing.

{¶27} The State presented evidence that Mr. Strehl had indicated to Trooper Robison that he was driving the van when it crashed into Mr. Lyon's yard. The State also presented evidence that Ms. Hassman had seen a similar van weaving a short distance up the road only a few minutes earlier. Mr. Lyons and Trooper Robison both testified that Mr. Strehl appeared intoxicated based on his glassy eyes, lack of coordination, and odor of alcohol. Furthermore, Trooper Robison testified that Mr. Strehl exhibited six out of six indicators of intoxication during the horizontal nystagmus test and that Mr. Strehl admitted to drinking prior to the accident. Viewing the evidence in the light most favorable to the State, there was sufficient evidence to support a finding that Mr. Strehl had operated a vehicle while under the influence of alcohol.

MANIFEST WEIGHT

{¶28} Mr. Strehl also contends that his conviction was against the manifest weight because his brother, Eugene Strehl, testified that Mr. Strehl did not have anything to drink prior to the accident and that he consumed alcohol after the crash while waiting for police to arrive. In addition, he argues that Mr. Lyons' testimony as to the timing of his call to police negated Ms. Hassman's report that she saw his van driving erratically. We disagree.

{¶29} In reviewing a challenge to the weight of the evidence, the appellate court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986).

{¶30} We initially note that, for the purposes of his manifest weight argument, Mr. Strehl does not dispute that he had driven the vehicle or that he had been drinking, he only disputes whether he had been drinking prior to or after he crashed his van into Mr. Lyons' front yard.

{¶31} Regarding the timing of the events, Mr. Lyons testified that he saw Mr. Strehl's van crash into his yard around 6 p.m. However, he also testified that he called 911 soon after the crash. According to the 911 call-center records, Mr. Lyons called 911 around 6:51 p.m. The trial court was entitled to accept the time recorded by the 911 call-center rather than Mr. Lyons' estimate. Therefore, it could have also considered Ms. Hassman's testimony that she observed Mr. Strehl's van driving erratically as credible.

{¶32} Eugene Strehl testified that Mr. Strehl had not consumed any alcohol until after the crash and that Mr. Strehl began to drink beer while waiting for police to arrive. However, Eugene Strehl also admitted that he had problems with his memory. Mr. Strehl essentially argues that the trial court lost its way when it did not believe his brother's testimony, but the trial court was not required to believe this testimony. Moreover, it could have found that Eugene Strehl's version of events was implausible. Irrespective of the exact timing of the events, the trial court could have reasonably determined that it did not believe that Mr. Strehl drank a substantial quantity of beer after the crash such that he could no longer maintain his balance when Trooper Robison arrived on the scene. Assuming the trial court relied upon and accepted the timeline established by the call logs, Mr. Strehl would have had to consume a substantial quantity of beer in less than fifteen minutes. However, the trial court could have reasonably rejected Mr. Strehl's contention.

{¶33} Furthermore, Mr. Lyons testified that he thought Mr. Strehl appeared intoxicated when upon first exiting the van. He also testified that Mr. Strehl's subsequent behavior only confirmed his suspicions about Mr. Strehl's intoxication.

{¶34} In reaching its determination that Mr. Strehl was guilty of violating R.C. 4511.19(A)(1)(a), the trial court could have reasonably given little weight to Eugene Strehl's testimony given that he admitted on the stand that he had problems with his memory. In addition, it could have reasonably determined that Eugene Strehl's testimony was not credible. Having reviewed all of the evidence in the record, we cannot say that the trial court lost its way so as to create a manifest miscarriage of justice when it determined that Mr. Strehl had operated a vehicle while intoxicated. Accordingly, his conviction for violating R.C. 4511.19(A)(1)(a) is not against the manifest weight of the evidence.

**{¶35}** His second assignment of error is overruled.

III.

**{¶36}** Mr. Strehl's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

CARR, J.
MOORE, J.
CONCUR

APPEARANCES:

FADI G. BOUMITRI, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and RUSSELL A. HOPKINS, Assistant Prosecuting Attorney, for Appellee.