[Cite as *State v. Meadows*, 2013-Ohio-4271.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

CHRISTOPHER C. MEADOWS

    Appellant

C.A. No.    26549

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 11 12 3491

DECISION AND JOURNAL ENTRY

Dated: September 30, 2013

HENSAL, Judge.

{¶1} Christopher Meadows appeals his murder and felonious assault convictions from the Summit County common pleas court. For the following reasons, this Court affirms.

I.

{¶2} On the evening of December 14, 2011, Mr. Meadows, Tramein Walker, Ashley Walker, and two others gathered in the kitchen of Ms. Walker's parent's house on Roselle Avenue in Akron Ohio. According to Ms. Walker, all of the people present were friends or family and they had all known each other for a long time. Everyone sat around the table talking and acting normally.

{¶3} Ms. Walker testified that as it got later, she decided to return to her house, which was across the street. About 15 minutes after she returned home, she was upstairs when she heard yelling coming from outside. She looked out the window briefly and saw Mr. Meadows and Mr. Walker standing facing each other and arguing. At some point thereafter she heard a

gunshot, so she ran downstairs. Before she reached the bottom of the stairs, she heard a second gunshot. When she got outside, she saw Mr. Walker lying in the grass and Mr. Meadows running away. Her parents, who had been on the lower level of her house, called 911, but Mr. Walker ended up dying from gunshot wounds to his back and leg.

{¶4} Mr. Meadows testified that, when he left the house around 10:00 p.m., Mr. Walker followed him. Once they got outside, Mr. Walker told Mr. Meadows that he was angry with him. According to Mr. Meadows, he, his older brother Curtis, and Mr. Walker had been good friends. A couple of months earlier, however, someone had killed his brother. Mr. Meadows said that Mr. Walker was angry at him because Mr. Walker thought that he had been socializing with the men who Mr. Walker thought were responsible for his brother's death. According to Mr. Meadows, he has never been friends with those men. Moreover, he maintained, no one knows who killed his brother.

{¶5} Mr. Meadows testified that, when he denied Mr. Walker's allegation, Mr. Walker insisted that it was true. When he denied the allegation again, Mr. Walker grabbed his shirt and punched him in the face. They began "tussling." After a while, they fell to the ground, which is when Mr. Meadows believes Mr. Walker realized that he had a gun in his pants. According to Mr. Meadows, Mr. Walker was behind him and tried to take the gun from his waistband, but he resisted. They began struggling for the gun and that is when it went off. After the gun went off, Mr. Walker felt his back, then started choking Mr. Meadows while continuing to struggle for the gun. When the gun went off again, Mr. Walker stopped moving. Mr. Meadows testified that he got up, grabbed the gun, and ran. An autopsy revealed that Mr. Walker died from exsanguination caused by the gunshot wound to his back.

**{¶6}** The Grand Jury indicted Mr. Meadows for felonious assault and murder. At trial, the court refused to give any lesser-included offense instructions or a self-defense instruction, but it did instruct the jury on accident. The jury found Mr. Meadows guilty of the offenses, and the trial court sentenced him to 15 years to life imprisonment. Mr. Meadows has appealed, assigning four errors.

II.

ASSIGNMENT OF ERROR I

APPELLANT WAS DENIED DUE PROCESS AND SUBSTANTIALLY PREJUDICED BY JURY INSTRUCTIONS WHICH WERE INCOMPLETE DUE TO DENIALS OF TIMELY DEFENSE REQUESTS FOR JURY CHARGES OF SELF-DEFENSE AND LESSER OR INFERIOR OFFENSES.

**{¶7}** Mr. Meadows argues that the trial court should have given a self-defense instruction as well as instructions on the lesser-included or inferior-degree offenses of voluntary manslaughter, involuntary manslaughter, aggravated assault, reckless homicide, and negligent homicide. "This Court reviews a trial court's decision to give or decline to give a particular jury instruction for an abuse of discretion under the facts and circumstances of the case." *State v. Sanders*, 9th Dist. Summit No. 24654, 2009-Ohio-5537, ¶ 45. "An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling." *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶8}** In deciding whether to instruct the jury on a lesser-included or inferior-degree offense, the trial court must view the evidence in a light most favorable to the defendant. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, ¶ 192, quoting *State v. Thomas*, 40 Ohio St.3d 213 (1988), paragraph two of the syllabus. *Id.* "[A] lesser-included-offense instruction is not warranted every time 'some evidence' is presented to support the lesser offense." *Id.* "Rather, a court must find 'sufficient evidence' to 'allow a jury to reasonably reject the greater offense and

find the defendant guilty on a lesser included (or inferior degree) offense.'" *Id*. (Emphasis deleted.), quoting *State v. Shane*, 63 Ohio St.3d 630, 632-633 (1992)).

{¶9} The Grand Jury indicted Mr. Meadows for purposeful murder under Revised Code Section 2903.02(A) and felony murder under Section 2903.02(B). Regarding voluntary manslaughter, the Ohio Supreme Court has recognized that it is an inferior-degree offense to a charge of purposeful murder. *Shane* at 632. Under Section 2903.03(A), "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another * * *." The trial court refused to give a voluntary manslaughter instruction because it found that there was "no evidence that [Mr. Meadows] acted in a sudden fit of rage or under * * * the influence of sudden passion."

{¶10} Mr. Meadows testified that Mr. Walker started their argument, that Mr. Walker struck him first, and that he was in fear for his life. He did not, however, suggest that he was under the influence of sudden passion or in a fit of rage when Mr. Walker was shot, let alone that he knowingly caused the death of his friend. *See* R.C. 2901.22(B) (defining knowingly). According to Mr. Meadows, because of the nature of the struggle, he had no idea whose finger was on the trigger when the gun discharged. We, therefore, conclude that the trial court correctly refused to instruct the jury on voluntary manslaughter.

{¶11} Regarding involuntary manslaughter, the Ohio Supreme Court has held that it is a lesser-included offense of murder. *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, ¶ 79. Under Revised Code Section 2903.04(A), "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." Mr. Meadows acknowledges that, although felony murder "requires a first or second degree predicate offense[,]

involuntary manslaughter requires the predicate of *any* felony." The trial court refused to provide an involuntary manslaughter instruction because the only non-murder felony that Mr. Meadows had been charged with was felonious assault, which is a felony of the first or second degree. Accordingly, the jury could not find Mr. Meadows guilty of involuntary manslaughter without also finding him guilty of felony murder. *Trimble*, 2009-Ohio-2961 at ¶ 192. The court also determined that, even though Mr. Meadows had asked for an instruction on aggravated assault, which is a felony of the third or fourth degree, it could not give an aggravated assault instruction because that offense has the same "under the influence of a sudden passion or in a sudden fit of rage" requirement that it had found was lacking with respect to his request for a voluntary manslaughter instruction.

{¶12} Mr. Meadows argues that the court should have given an involuntary manslaughter instruction because aggravated assault would have served as the predicate offense. The Revised Code's aggravated assault provision, Section 2903.12(A), provides that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly * * * [c]ause serious physical harm * * *." Upon review of the record, we conclude that the trial court did not abuse its discretion when it found that, just as there was insufficient evidence to warrant giving an instruction on voluntary manslaughter because Mr. Meadows was not under the influence of sudden passion or in a fit of rage when Mr. Walker was shot or that he knowingly inflicted Mr. Walker's wounds, there was insufficient evidence to warrant an aggravated assault charge and, consequently, an involuntary manslaughter charge.

{¶13} Mr. Meadows also argues that the trial court should have instructed the jury on reckless and negligent homicide. He requested those instructions in a written motion that he filed on the final day of trial. At trial, however, when the court asked Mr. Meadows which lesser-included offense instructions he was seeking, he did not mention reckless or negligent homicide. Under Criminal Rule 30(A), "a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." In light of the fact that Mr. Meadows did not make a specific objection to the trial court's failure to provide a reckless or negligent homicide instruction, he has forfeited all but plain error. *State v. Michel*, 9th Dist. Summit No. 25184, 2011-Ohio-2015, ¶ 22. Because Mr. Meadows has not argued plain error in his brief, this Court will not undertake that analysis. *Id.*

{¶14} Mr. Meadows also argues that he was entitled to a self-defense instruction. Self-defense is an affirmative defense that the defendant bears the burden of establishing by a preponderance of the evidence. *State v. Inman*, 9th Dist. Medina No. 03CA0099-M, 2004-Ohio-1420, ¶ 8. A defendant must demonstrate that:

> (1) he was not at fault in creating the situation giving rise to the affray; (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was in the use of force; and (3) that he did not violate any duty to retreat or avoid the danger.

*Id.*, quoting *State v. Mason*, 9th Dist. Summit No. 21397, 2003-Ohio-5785, ¶ 4.

{¶15} Mr. Meadows argues that he was entitled to a self-defense instruction because Mr. Walker struck him first, he was in fear for his life, and, under the circumstances, he did not have a duty to retreat. The trial court denied his request because he testified that he could not recall whose finger was on the trigger of the gun when it went off and did not specifically testify that he shot Mr. Walker in order to defend himself.

{¶16} The Ohio Supreme Court has held that self-defense must be an intentional act. *State v. Rogers*, 43 Ohio St.2d 28, 30-31 (1975) ("[T]he doctrine of self-defense has no application to this case because the record is devoid of evidence that appellant * * * intended to shoot the decedent * * *."). "Self-defense presumes intentional, willful use of force to repel force or escape force." *State v. Champion*, 109 Ohio St. 281, 286-287 (1924). "In a case of homicide, where defendant testifies that [he] did not intend to fire the fatal shot, and that [he] did not knowingly 'pull the trigger,' such testimony is entirely inconsistent and irreconcilable with the right of self-defense." *Id*. at paragraph three of the syllabus; *State v. Perry*, 9th Dist. Summit No. 25271, 2011-Ohio-2242, ¶ 27 ("Because [defendant] presented no evidence that he intentionally fired the gun to protect himself from imminent death or great bodily harm, and he instead presented evidence that the firing of the gun was accidental, there was no error in the trial court's failure to instruct on self-defense.").

{¶17} Mr. Meadows testified that, as he was on the ground struggling with Mr. Walker for the gun, "that's when the gun went off." He also testified that he did not "know whose finger was on the trigger when it went off[.]" In light of his testimony, we conclude that the trial court correctly denied his request for an instruction on self-defense.

{¶18} Upon review of the record, we conclude that the trial court did not abuse its discretion when it denied Mr. Meadows's request for additional jury instructions. His first assignment of error is overruled.

ASSIGNMENT OF ERROR II

ABSENT A HEARING AND EXPERT TESTIMONY A COMPETENCY DETERMINATION BASED ON WRITTEN REPORTS NOT STIPULATED INTO EVIDENCE WAS PLAIN ERROR TO THE PREJUDICE OF APPELLANT'S CONSTITUTIONAL RIGHTS TO CONFRONTATION AND DUE PROCESS.

{¶19} Mr. Meadows argues that the trial court incorrectly determined that he was competent to stand trial. "The test for determining whether a defendant is competent to stand trial is 'whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 45, quoting *State v. Berry*, 72 Ohio St.3d 354, 359 (1995). "A defendant is presumed to be competent to stand trial, and the burden is on the defendant to prove by a preponderance of the evidence that he is not competent." *Id*., citing R.C. 2945.37(G). "A trial court's finding that a defendant is competent to stand trial will not be disturbed when there is some reliable and credible evidence supporting those findings." *Id*. at ¶ 46.

{¶20} Mr. Meadows argues that the trial court's competency determination was not supported by competent credible evidence because the reports that it relied on were not introduced into evidence or made part of the record. The State acknowledges that the trial court initially put the wrong case number on the journal entry that contained its competency determination, but notes that the court later corrected the typographical error nunc pro tunc. According to that journal entry, "[a]ll parties stipulate[d]" to Mr. Meadows's psychological diagnostic reports.

{¶21} Mr. Meadows argues that, even if the corrected journal entry is part of the record, it incorrectly indicated that he had stipulated to the diagnostic reports. He is correct that he never expressly stipulated to the reports. At a hearing on March 6, 2012, the trial court noted that a report by the "Psycho-Diagnostic Clinic" indicated that Mr. Meadows was competent to stand trial. In response, Mr. Meadows moved for additional testing, which the court granted. At a hearing on May 15, 2012, the trial court noted that it had been furnished with a copy of a report

that had been prepared by "the psychologist retained by the defense" and that it expressed the view that Mr. Meadows was competent to stand trial. The court then asked Mr. Meadows's lawyer "what's your preference?" The lawyer answered that he "would request that we set * * * a trial date * * *."

{¶22} Mr. Meadows does not dispute that both diagnostic reports indicated that he was competent to stand trial. When given the opportunity to contest their findings, Mr. Meadows indicated, instead, that the trial court should set a trial date. He, therefore, waived his right to any further hearing on the issue. While he notes that the reports were not made part of the record, it was his burden under Section 2945.37(G) to demonstrate that he was not competent to stand trial. In the absence of any evidence in the record to establish that he was not competent, we conclude that the trial court's decision was correct. Mr. Meadows's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

BECAUSE IT PERMITS ONLY A MANDATORY SENTENCE OF 15 YEARS TO LIFE AND REMOVES ALL SENTENCING DISCRETION FROM A TRIAL COURT R.C. 2929.02(B)(1) VIOLATES THE SEPARATION OF POWERS DOCTRINE AND CONSTITUTIONAL PROTECTIONS OF DUE PROCESS AND AGAINST CRUEL AND UNUSUAL PUNISHMENT.

{¶23} Under Revised Code Section 2929.02(B)(1), "whoever is convicted of or pleads guilty to murder in violation of section 2903.02 of the Revised Code shall be imprisoned for an indefinite term of fifteen years to life." Mr. Meadows argues that Section 2929.02(B)(1) is unconstitutional because it did not give the trial court the ability to consider mitigating circumstances or discretion as to which sentence to impose. He argues that the section violates the separation of powers doctrine and the prohibition against cruel and unusual punishment. According to Mr. Meadows, it may be that, "in the exercise of discretion and considering all

sentencing factors, * * * the trial court could * * * have chosen 15 years to life," but "the point is a trial court should have discretion to make that choice."

{¶24} Because Mr. Meadows did not assert that Section 2929.02(B)(1) is unconstitutional at trial, he is limited to arguing plain error. *See State v. Strehl*, 9th Dist. Medina No. 10CA0063-M, 2012-Ohio-119, ¶ 16. "An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State v. Cook*, 83 Ohio St.3d 404, 409 (1998), quoting *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142 (1955), paragraph one of the syllabus.

{¶25} Regarding whether Mr. Meadows's mandatory sentence constitutes cruel and unusual punishment, our decision is controlled by the United States Supreme Court's decision in *Harmelin v. Michigan*, 501 U.S. 957 (1991). In *Harmelin*, the defendant "was convicted of possessing 672 grams of cocaine and sentenced to a mandatory term of life in prison without possibility of parole." *Id*. at 961. On appeal to the Supreme Court, he argued that "his sentence is unconstitutionally 'cruel and unusual' * * * because the sentencing judge was statutorily required to impose it, without taking into account the particularized circumstances of the crime and of the criminal." *Id*. at 961-962. The Supreme Court determined that Mr. Harmelin's "claim has no support in the text and history of the Eighth Amendment." *Id*. at 994. It explained that "[s]evere mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history." *Id*. at 994-995. Although the Supreme Court acknowledged that a sentencing court must be able to make an individualized determined of appropriateness in death penalty cases, "there is no comparable requirement outside the capital context, because of the qualitative difference between death and

all other penalties." *Id*. at 995. It, therefore, rejected Mr. Harmelin's argument that the sentencing court could not impose his sentence without considering mitigating evidence. *Id*. at 996. For the same reason, we reject Mr. Meadows's argument that his sentence is cruel and unusual because the trial court was not allowed to consider mitigating factors and had no discretion as to its length.

{¶26} Mr. Meadows has also argued that the fact that the General Assembly gave the trial court no discretion over his sentence violates the separation of powers doctrine. He argues that, under Article IV Section 4(B) of the Ohio Constitution, a trial court must "be allowed to exercise independent judgment" and have "discretion in sentencing." Article IV, Section 4(B) provides that "[t]he courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law." It does not suggest that the General Assembly is prohibited from limiting its sentencing discretion. Rather, in *State v. Banks*, 9th Dist. Summit No. 25279, 2011-Ohio-1039, this Court explained that "[i]t is well settled that the General Assembly has the plenary power to prescribe crimes and fix penalties." *Id*. at ¶ 48. "Mandatory sentencing laws enacted pursuant to this authority do not usurp the judiciary's power to determine the sentence of individual offenders." *Id*., quoting *State v. Campa*, 1st Dist. Hamilton No. C–010254, 2002 WL 471174, *6 (Mar. 29, 2002). "The legislature has the initial right to provide for sentences, mandatory or otherwise, that are felt to be consistent with the nature of the crime committed." *State v. Bonello*, 3 Ohio App.3d 365, 367 (10th Dist.1981).

**{¶27}** Upon review of the record, we conclude that Mr. Meadows has not demonstrated that the trial court plainly erred when it imposed a sentence of 15 years to life. His third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

FAILURES TO MOVE TO SUPPRESS STATEMENTS AND TO CHALLENGE THE MANDATORY SENTENCE DENIED THE CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

**{¶28}** Mr. Meadows's argues that his trial lawyer was ineffective because his lawyer did not file a motion to suppress statements that he made to police after his arrest. He also argues that his lawyer should have challenged the constitutionality of his sentence. To prevail on a claim of ineffective assistance of counsel, Mr. Meadows must show (1) that counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that but for counsel's deficient performance the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. A court, however, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689. Further, to establish prejudice, Mr. Meadows must show that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Id*. at 694.

**{¶29}** Mr. Meadows argues that the complaint on which the arrest warrant was based failed to establish that there was probable cause to believe that an offense had been committed.

He notes that the clerk who issued the warrant did not indicate whether he had relied on a separately-filed "Affidavit for Complaint," which included additional details about the incident.

{¶30}  The warrant indicates that its determination of probable cause was "based on facts and circumstances stated in the complaint and sworn to by the complaint."  It is not clear whether this included the "Affidavit for Complaint," which was sworn to, but was contained on a separate sheet of paper.  We, therefore, conclude that this part of Mr. Meadow's argument cannot be determined from the appellate record and must be raised, instead, via a petition for post-conviction relief.  *See State v. Zupanic*, 9th Dist. Wayne No. 12CA0065, 2013-Ohio-3072, ¶ 5 (declining to consider ineffective assistance argument that would "require this Court to act in a way that is 'purely speculative' and would require resort to evidence outside the record on appeal.").

{¶31}  Mr. Meadows also argues that, even if the affidavit was considered by the clerk, it failed to answer the question:  "What makes you think that [this] defendant committed the offense charged?"  *Jaben v. United States*, 381 U.S. 214, 224 (1965).  We disagree.  The affidavit indicated that "Mr. Meadows pulled out a large caliber handgun and shot the victim twice * * *."  It also included the date, time, and location of the incident.  In *State v. Tolbert*, 9th Dist. Summit No. 24958, 2010-Ohio-2864, this Court explained that even a "bare bones" recitation of the facts can be sufficient to establish probable cause, as long as it supplies "sufficient information to support an independent judgment that probable cause exists * * *."  *Id*. at ¶ 31-32, quoting *Whitely v. Warden*, 401 U.S. 560, 564 (1971).  Upon review of the affidavit and complaint, we conclude that they were sufficient to establish probable cause for Mr. Meadows's arrest.  Mr. Meadows's lawyer's performance, therefore, did not fall below an objective standard of reasonableness for not contesting the arrest warrant.

**{¶32}** Mr. Meadows also argues that his lawyer should have argued that his 15-year to life sentence violated his constitutional rights. As we noted earlier, however, that argument is without merit. Accordingly, it would not have affected the outcome of his trial.

**{¶33}** We conclude that Mr. Meadows has not established ineffective assistance of trial counsel. His fourth assignment of error is overruled.

III.

**{¶34}** Mr. Meadows's assignments of error are overruled. The judgment of the Summit County common pleas court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
CONCURS.

CARR, P.J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

MARK H. LUDWIG, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.