[Cite as *State v. Caldwell*, 2013-Ohio-1417.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

PHILLIP D. CALDWELL

    Appellant

C.A. No.    26306

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 11 09 2469 (A)

DECISION AND JOURNAL ENTRY

Dated: April 10, 2013

CARR, Judge.

{¶1}    Appellant Phillip Caldwell appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}    According to Christopher Trammell, on the evening of July 23, 2011, he attended a friend's bachelor party. When he got home, his fiancée, April Haskins, began arguing with him, so he went out to his car to have a cigar and watch television. After a while he decided to go inside, but before he got to the door, two men approached, and one of them shot him two times. At the hospital, Mr. Trammell told police that he knew the shooter as "PT." Officers presented him with a photo array, and he identified Phillip Caldwell and Russell Suggs as the two men who had approached him. At trial, however, Mr. Trammell said that he does not snitch on other people. He claimed that he does not know who PT is and that "PT" is merely the name he has given to the person that he heard his fiancée was seeing while he was in prison. He

testified that, because he was on medication while he was at the hospital, he misunderstood the officer's instructions about the photo array and merely identified anyone that he recognized in the pictures. He testified that he had never had any problems with Mr. Caldwell or Mr. Suggs, that they are like family to him, and that he could not think of any reason that one of them would shoot him.

{¶3} Dwayne Tomlinson testified that he is Ms. Haskins's brother. He said that, on the night of the shooting, he asked his girlfriend, Maya Hammonds, to drive him to his sister's house. When they arrived, he went into the house and Ms. Hammonds stayed in the car. He looked around, but could not find his sister or Mr. Trammell, so he returned to the car. As they pulled away, he noticed Mr. Trammell standing in the driveway, so he told his girlfriend to stop. After he got out, he saw another car pull up with Mr. Caldwell and Mr. Suggs inside. When he heard a gunshot, he looked and saw that Mr. Caldwell was holding a gun. After the second shot, he ran back to his girlfriend's car and they drove away. They returned a short time later and found Mr. Trammell lying on the ground bleeding. According to Mr. Tomlinson, while they were at the hospital waiting for news on Mr. Trammell's condition, Mr. Suggs arrived and explained to them that "he didn't know what was going on," but that it "wasn't his fault" and that he had "nothing to do with what was going on."

{¶4} April Haskins testified that she is Mr. Trammell's fiancée. She said that, a few hours before the shooting, she ran into Mr. Caldwell and Mr. Suggs at a bar. She said that, at one point, Mr. Caldwell touched her inappropriately, but he later apologized. She did not tell Mr. Trammell about the incident. She testified that, after Mr. Trammell went out to his car, she fell asleep on the couch. She did not wake up until a police officer knocked at her door following the shooting. She said that, at the hospital, Mr. Trammell told her that Mr. Caldwell

and Mr. Suggs were at their house at the time he got shot. She also said that Mr. Suggs came to the hospital and admitted that he was present during the shooting. She also overheard Mr. Suggs tell Mr. Caldwell on the telephone "I'm about to come get you. This bitch ass nigga C boy done snitched," meaning that Mr. Trammell had revealed who shot him. She denied being romantically involved with Mr. Caldwell, but thought that Mr. Caldwell had dated Mr. Trammell's daughter.

{¶5} Ms. Hammonds testified that she has known Mr. Trammell and Ms. Haskins for a long time, but she did not know Mr. Caldwell or Mr. Suggs until after the shooting. According to her, she drove Mr. Tomlinson to his sister's house because that was where he was staying and he told her that he needed to get something. She said that, as she was waiting in the car, she saw Mr. Trammell standing at the entrance of the garage when a man walked up to him. She said that, as the men were talking, she saw her boyfriend exit the house, then heard gunshots. Her boyfriend ran back to the car and they drove away. When they returned to the house, Mr. Trammell was lying on the ground. Ms. Hammonds testified that she met Mr. Suggs at the hospital. When he arrived, she tried to tell the police that he had been with the shooter, but they would not listen to her. Ms. Hammonds did not remember Mr. Suggs making any telephone calls while he was at the hospital because, according to her, he was too busy arguing with her.

{¶6} The Grand Jury indicted Mr. Caldwell for felonious assault with a firearm specification. A jury found him guilty of the offense and specification, and the trial court sentenced him to seven years in prison. Mr. Caldwell has appealed, assigning five errors.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN ADMITTING HEARSAY EVIDENCE OVER DEFENDANT'S OBJECTION.

**{¶7}** Mr. Caldwell argues that the trial court incorrectly allowed Mr. Tomlinson, Ms. Haskins, and Mr. Hammonds to testify about what Mr. Suggs said at the hospital, incorrectly allowed Ms. Haskins to testify about whom Mr. Trammell told her had shot him, incorrectly allowed a police officer to testify that Mr. Trammell identified his shooter as PT, and incorrectly allowed an officer to testify about what Mr. Tomlinson had stated during a police interview. He has argued that the statements were inadmissible hearsay. Evidence Rule 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." As a general rule, hearsay is not admissible. Evid.R. 802.

**{¶8}** Mr. Caldwell failed to object to several of the statements that he alleges were hearsay. This Court has long held that "an appellate court will not consider as error any issue a party was aware of but failed to bring to the trial court's attention[ ]" at a time when the trial court might have corrected the error. *State v. Dent*, 9th Dist. No. 20907, 2002–Ohio–4522, ¶ 6. Mr. Caldwell, therefore, has forfeited his right to challenge those statements on appeal. *State v. Mohamed*, 9th Dist. No. 11CA0050-M, 2012-Ohio-3636, ¶ 22.

**{¶9}** The Ohio Supreme Court has held that, even if a party forfeits an argument by failing to make an appropriate objection during trial, a court may notice plain error. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 15, 23. Mr. Caldwell, however, did not argue plain error in his brief. While he argued plain error in his reply brief, a party "may not raise new * * * issues for consideration in his reply brief; rather, the reply brief is 'merely an opportunity to reply to the brief of the appellee.'" *Willett v. Willett*, 9th Dist. No. 22167, 2005-Ohio-342, ¶ 8 fn. 1, quoting *State v. Palmison*, 9th Dist. No. 20854, 2002-Ohio-2900, ¶ 32, fn. 2; *see* Loc.R.

7(D). Accordingly, this Court will only review the alleged hearsay statements to which Mr. Caldwell objected.

**{¶10}** Mr. Caldwell's first hearsay objection was to Mr. Tomlinson's testimony about what Mr. Suggs said at the hospital after the shooting. According to Mr. Tomlinson, Mr. Suggs "was just trying to see if [Mr. Trammell] was all right and saying that he didn't have nothing to do with what was going on, he didn't know what was going on." When asked whether Mr. Suggs was being apologetic, Mr. Tomlinson answered: "He was just saying it wasn't his fault, he didn't know what was going on." Mr. Caldwell argues that the testimony bolstered the testimony of other witnesses regarding whether Mr. Suggs was present when he allegedly shot Mr. Trammell.

**{¶11}** Even if the trial court improperly allowed Mr. Tomlinson's testimony, we conclude that it was harmless error. Crim.R. 52(A) (providing that any error that does not affect substantial rights shall be disregarded). As Mr. Caldwell has noted, Mr. Tomlinson was not the only witness who testified about what Mr. Suggs said at the hospital. *See State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 59 (concluding that admission of cumulative evidence was harmless error). According to Ms. Haskins, she heard Mr. Suggs say that, although he was at her house, he was not involved with the shooting. Mr. Caldwell did not object to her testimony. Ms. Hammond also testified without objection that Mr. Suggs admitted at the hospital to being present during the shooting.

**{¶12}** Mr. Caldwell also objected to Ms. Haskins's testimony about what Mr. Trammell told her about the shooting. According to Ms. Haskins, when she asked Mr. Trammell about the shooting, the first time he told her that he did not know who shot him and the second time he told her that Mr. Suggs and Mr. Caldwell were at their house when he got shot. Mr. Caldwell argues

that Ms. Haskins's testimony impermissibly bolstered the testimony of the State's other witnesses.

{¶13} Ms. Haskins's testimony was admissible because it was offered to impeach Mr. Trammell's testimony, not "for the truth of the matter asserted." Evid.R. 801(C); *see State v. Young*, 9th Dist. No. 93CA005710, 1994 WL 466802, *2 (Aug. 31, 1994). According to a police detective, following the shooting, Mr. Trammell told him that Mr. Caldwell had been involved. At trial, however, Mr. Trammell testified that the only reason that he picked Mr. Caldwell out of the photo array was because he had been heavily medicated and misunderstood the detective's instructions. Consequently, the court allowed the State to treat Mr. Trammell as a hostile witness. Ms. Haskins's testimony that Mr. Trammell told her that Mr. Caldwell was at their house at the time of the shooting cast doubt on Mr. Trammell's explanation for why he had selected Mr. Caldwell out of the photo array. Accordingly, it was proper impeachment testimony. *See State v. Conley*, 10th Dist. No. 99AP-579, 2000 WL 290189, *7 (Mar. 21, 2000) (explaining that "[i]mpeachment by contradiction is a recognized mode of impeachment not governed by the Rules of Evidence but rather by common law principles."); Evid.R. 616(C).

{¶14} Upon review of the record, we conclude that Mr. Caldwell has not established that the court improperly admitted any hearsay testimony that affected his substantial rights. *See* Crim.R. 52(A). His first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

MR. CALDWELL WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AND HIS CONVICTION WAS IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT TO COUNSEL.

{¶15} Mr. Caldwell argues that his lawyer was ineffective for not objecting to a number of alleged hearsay statements. He also argues that his lawyer failed to move for a fingerprint

analysis of the shell casings that were found at the scene of the shooting, failed to involve him in the jury selection process, and improperly allowed an active police officer to serve on the jury. In order to demonstrate ineffective assistance of counsel, Mr. Caldwell must show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable possibility that the outcome of the trial would have been different. *Id*. at 694.

{¶16} Regarding his lawyer's failure to object to hearsay, Mr. Caldwell argues that his lawyer should have objected when Ms. Haskins testified that Mr. Suggs told her at the hospital on the night of the shooting that, although he was present during the shooting, he was not involved. He argues that his lawyer should also have objected when Ms. Haskins testified about what she allegedly heard Mr. Suggs say on the phone to Mr. Caldwell. He also argues that his lawyer should have objected when Ms. Hammonds testified that Mr. Suggs told her that he had been the driver of the shooter's vehicle. He further argues that his lawyer should have objected when a police officer testified about what Mr. Tomlinson told him during interviews on the night of the shooting.

{¶17} The Ohio Supreme Court has written that "the failure to make objections [to inadmissible hearsay] is not alone enough to sustain a claim of ineffective assistance of counsel." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 103. The defendant still has to show that there was a substantial violation of counsel's essential duties to his client and that he was materially prejudiced by his lawyer's ineffectiveness. *State v. Holloway*, 38 Ohio St.3d 239, 244

(1988). In this case, Mr. Caldwell has not demonstrated that he was prejudiced by his lawyer's actions.

{¶18} Regarding the officer's testimony about his interview with Mr. Tomlinson, we conclude that, even if the testimony was hearsay, its admission was not prejudicial because Mr. Tomlinson testified and was available for cross-examination. *State v. Spirko*, 59 Ohio St.3d 1, 31 (1991) (concluding that admission of hearsay evidence was not prejudicial because the person whom the witness quoted testified and was available for cross-examination on the issue). Regarding Mr. Suggs's alleged statements to Ms. Haskins and Ms. Hammonds that, although he had been present during the shooting, he was not involved, we note that his alleged statements did not implicate Mr. Caldwell. Furthermore, although Ms. Haskins claimed that the person Mr. Suggs called from the hospital was Mr. Caldwell, the only statement that she alleged that she overheard him say did not include anything that would identify Mr. Caldwell as the person on the other end of the call. In light of the fact that Mr. Suggs's alleged statement did not identify Mr. Caldwell as the person he was talking to or otherwise implicate Mr. Caldwell in the shooting, we conclude that Mr. Caldwell has not demonstrated that there is a reasonable possibility that the outcome of the trial would have been different if his lawyer had objected to the testimony.

{¶19} With respect to Mr. Caldwell's lawyer's discovery requests, we note that "[d]ebatable trial tactics and strategies do not constitute a denial of effective assistance of counsel." *State v. Smith*, 9th Dist. No. 24382, 2009-Ohio-1497, ¶ 9. According to Officer Michael Fox, he did not test the shell casings for fingerprints because, even if the casings had fingerprints on them at some point, they would have been vaporized when the shells were fired. He also testified that, although they did find one unfired round, they did not process the scene for

fingerprints because it had been raining, which can "wash away evidence[,] so to speak." In light of his uncontested testimony, we conclude that it was reasonable for Mr. Caldwell's lawyer not to request a fingerprint analysis of the bullet and shell casings found at the scene.

{¶20} Regarding the lawyer's reason for leaving a police officer on the jury, we note that the officer was the last alternate added to the jury and that the lawyer had already used all of Mr. Caldwell's peremptory challenges. She used one of the challenges on another police officer, one on the spouse of an attorney, one on a federal law clerk, and one on the vice-president of a company. Furthermore, there is nothing in the record that demonstrates that the juror should have been challenged for cause. *See State v. Richmond*, 2d Dist. No. 2011-CA-17, 2011-Ohio-6807, ¶ 2, 35-37. During voir dire, the juror told the court that the previous day he had made five traffic stops and had let each person go with a warning. Mr. Caldwell's lawyer also specifically asked the juror to explain the phrase "innocent until proven guilty" to her. The juror also correctly answered a question about reasonable doubt. Mr. Caldwell's lawyer, therefore, could have reasonably determined that the juror would correctly apply the law to the facts, despite his employment as a police officer.

{¶21} Regarding Mr. Caldwell's assertion that his lawyer failed to consult with him during voir dire, the Ohio Supreme Court has held that, if "a defendant bases an ineffective-assistance claim on an assertion that his counsel allowed the impanelment of a biased juror, the defendant 'must show that the juror was actually biased against him.'" *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 67, quoting *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir.2001). The record does not contain any information regarding the extent to which Mr. Caldwell was able to consult with his lawyer during voir dire or any obvious juror bias. We, therefore, conclude that this issue would be more appropriate for a post-conviction relief proceeding than

addressed on direct appeal. *See State v. Dowdell*, 9th Dist. No. 25930, 2012-Ohio-1326, ¶ 10; *State v. Sweeten*, 9th Dist. No. 07CA009106, 2007-Ohio-6547, ¶ 12. Mr. Caldwell's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE FINDING THAT MR. CALDWELL WAS GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶22}** Mr. Caldwell argues that his conviction is against the manifest weight of the evidence. A determination of whether a conviction is against the manifest weight of the evidence does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. *State v. Love*, 9th Dist. No. 21654, 2004–Ohio–1422, ¶ 11. Rather, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

**{¶23}** Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further, when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. *Id.*

**{¶24}** The jury convicted Mr. Caldwell of felonious assault under R.C. 2903.11. Mr. Caldwell does not deny that someone shot Mr. Trammell. His argument is that the evidence does not establish that he was involved in it. He notes that there was no physical evidence connecting him to the shooting. He also notes that Mr. Trammell testified that the only reason he picked Mr.

Caldwell out of a photo array is because he was under the influence of medication and thought that he was supposed to identify anyone that he knew. He contends that, although Mr. Tomlinson testified that he was at Mr. Trammell's residence at the time of the shooting, Mr. Tomlinson did not testify that he was the shooter. He also contends that, although Mr. Tomlinson told the police that Mr. Caldwell was the shooter, Mr. Tomlinson was merely going along with what he thought Mr. Trammell had told police. Mr. Caldwell further notes that Ms. Haskins and Ms. Hammond gave conflicting testimony with respect to whether Mr. Suggs called Mr. Caldwell from the hospital. Finally, he argues that this Court should not give any weight to any of the hearsay statements that were admitted during the course of the trial.

{¶25} The first time Mr. Tomlinson spoke to police, he said that he saw Mr. Suggs and another man get out of a car and that it was the man that he could not identify who shot Mr. Trammell. He indicated that, before the interview began, an officer had told him that Mr. Trammell said the shooter's name was Phil. He said that there was only one Phil that he could think of and that the gait of the shooter was consistent with that person. About an hour later, Mr. Tomlinson spoke to the officer again and revealed that he had not disclosed everything he knew about the shooting. During the second interview, Mr. Tomlinson affirmatively identified the person he knows as Phil as the person who shot Mr. Trammell. At trial, Mr. Tomlinson testified that he saw Mr. Suggs and Mr. Caldwell get out of a car at Mr. Trammell's house. After the first shot, he looked to see who had the gun and saw that it was Mr. Caldwell. He testified that, although Mr. Suggs showed up at the hospital, Mr. Caldwell did not. He also corroborated Ms. Haskins testimony that Mr. Suggs made telephone calls from the hospital.

{¶26} Although there were some discrepancies in the witnesses' testimony, Mr. Tomlinson maintained from shortly after the shooting that Mr. Caldwell was the person who shot

Mr. Trammell. Mr. Trammell also initially identified Mr. Caldwell as one of the men who had been involved in the attack, before changing his story at trial, claiming that "I don't tell on people." Upon review of the record, we cannot say that the jury lost its way when it determined that Mr. Caldwell feloniously assaulted Mr. Trammell. Mr. Caldwell's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN FAILING TO HOLD A HEARING ON DEFENDANT'S MOTION FOR NEW TRIAL.

{¶27} After the jury found Mr. Caldwell guilty, he moved for a new trial alleging ineffective assistance of counsel, prosecutorial misconduct, and insufficient evidence. The trial court denied the motion because it determined that ineffective assistance is not a ground for a new trial, that Mr. Caldwell had not demonstrated prosecutorial misconduct, and that there was sufficient evidence to support his conviction. Mr. Caldwell argues that the court should have held a hearing on his motion because several of the issues he raised could not be resolved without one. The decision on whether a motion for new trial warrants a hearing lies within the discretion of the trial court. *State v. Smith*, 30 Ohio App.3d 138, 139 (9th Dist.1986).

{¶28} Regarding Mr. Caldwell's ineffective assistance claims, the trial court incorrectly concluded that they could not be raised in a motion for new trial. *State v. Lei*, 10th Dist. No. 05AP-288, 2006-Ohio-2608, ¶ 25; *State v. Lordi*, 140 Ohio App.3d 561, 569 (7th Dist.2000) ("Although a petition for post-conviction relief may provide a more effective and appropriate vehicle for the assertion of an ineffective-assistance-of-counsel claim, a defendant may validly assert the denial of effective assistance of counsel as a basis for new trial pursuant to Crim.R. 33(A)(1) or (E)(5)."); *State v. Judy*, 1st Dist. No. C-850796, 1986 WL 8100, *1 (July 23, 1986).

The question, however, is whether the mistake made by the trial court affected Mr. Caldwell's substantial rights. *See* Crim.R. 52(A).

{¶29} Mr. Caldwell argues that he raised two issues that could not be resolved without a hearing. First, he argued in his motion that his lawyer failed to request a fingerprint analysis of the shell casings. As we previously explained, an officer from the crime scene unit testified that, even if a shell casing contains a fingerprint, the fingerprint vaporizes when the shell is fired. He also indicated that any fingerprints that might have been on the unfired bullet were likely destroyed by the rain. Mr. Caldwell did not present any evidence with his motion for new trial that disputed the officer's testimony. Second, Mr. Caldwell argued that his lawyer did not involve him in the jury selection process. In order to establish a claim for ineffective assistance of counsel, Mr. Caldwell had to establish that, but for his lawyer's errors, there is a reasonable possibility that the outcome of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In his motion, Mr. Caldwell did not allege anything he would have done differently during voir dire. Accordingly, we conclude that the trial court did not abuse its discretion when it denied Mr. Caldwell's motion for new trial without holding a hearing. His fourth assignment of error is overruled.

**ASSIGNMENT OF ERROR V**

> THE ADMISSION OF CO-DEFENDANT SUGGS'S HEARSAY STATEMENT WAS IN VIOLATION OF MR. CALDWELL'S RIGHT TO CONFRONTATION OF WITNESSES AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶30} Mr. Caldwell argues that the trial court violated his right to confrontation by allowing Ms. Haskins and Ms. Hammonds to testify about what they heard Mr. Suggs say at the hospital. Mr. Caldwell, however, did not object to the testimony and has not developed a plain error argument in his appellate brief. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 15,

23; *State v. Strehl*, 9th Dist. No. 10CA0063-M, 2012-Ohio-119, ¶ 18. While he has argued plain error in his reply brief, he may not raise a new issue for consideration in his reply brief. *Willett v. Willett*, 9th Dist. No. 22167, 2005-Ohio-342, ¶ 8 fn. 1, quoting *State v. Palmison*, 9th Dist. No. 20854, 2002-Ohio-2900, ¶ 32, fn. 2; *see* Loc.R. 7(D). Accordingly, Mr. Caldwell's fifth assignment of error is overruled.

### III.

**{¶31}** Mr. Caldwell's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

MOORE, P. J.
CONCURS.

BELFANCE, J.
CONCURRING IN JUDGMENT ONLY.

{¶32} I concur in the judgment. With regard to Mr. Caldwell's second assignment of error, I believe there could be merit to his argument that counsel was ineffective in failing to secure testing of the cartridge and casings that remained in the gun. I do not agree with the majority that Officer Fox's testimony about the likelihood of discovering fingerprints on the cartridge and casings found at the scene establishes that Mr. Caldwell's trial counsel was not deficient in failing to have them examined. Officer Fox's testimony was speculative. He did not have knowledge as to whether fingerprints were present or not. He merely stated that it was possible that they did not exist. Furthermore, I do not believe that it is appropriate to potentially foreclose Mr. Caldwell from post-conviction relief (e.g. discovering that someone else's fingerprints *were* on the items discovered at the scene) on the basis that Officer Fox testified that he did not believe fingerprints were likely to be found. He could be wrong, and this could cause potential problems concerning the law of the case. Nevertheless, because the record contains no evidence whether there were any fingerprints on the cartridge or casings discovered at the scene of the shooting, Mr. Caldwell cannot demonstrate in his direct appeal that he suffered any prejudice, even assuming that his trial counsel was deficient. Therefore, his assignment of error should still be overruled.

{¶33} I also would overrule Mr. Caldwell's first assignment of error on the basis that any error in admitting the alleged hearsay evidence was harmless.

{¶34} Accordingly, I concur in the judgment.

APPEARANCES:

SCOT A. STEVENSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.