[Cite as *In re P.C.*, 2020-Ohio-6791.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

IN RE: P.C.

C.A. No.     19CA0092-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     2017 10 DQ 0529

DECISION AND JOURNAL ENTRY

Dated: December 21, 2020

---

SCHAFER, Judge.

{¶1}   P.C. appeals the judgment of the Medina County Court of Common Pleas Juvenile

Division classifying him as a Tier III sex offender.  This Court affirms.

I.

{¶2}   We previously summarized the facts of this case as follows:

In October of 2017, a complaint was filed in the Medina County Court of Common Pleas, Juvenile Division, charging P.C. with six counts of rape, felonies of the first degree if committed by an adult, and six counts of gross sexual imposition, felonies of the third degree if committed by an adult.  The victim was P.C.'s 4-year-old niece.  The juvenile court denied the State's motion to transfer the case from the Juvenile Division to the General Division.  The State then filed a notice of intent to seek a serious youthful offender ("SYO") dispositional sentence, and P.C. was subsequently indicted on three counts of rape and three counts of gross sexual imposition, all with attendant SYO specifications.

P.C. [entered a plea of admit and guilty] to the indictment and the juvenile court imposed a blended sentence.  For the adult portion of the sentence, the court ordered P.C. to serve 15 years to life in prison on each of the three rape counts and 36 months in prison on each of the three gross sexual imposition counts, all to be served concurrently with each other, and further classified P.C. as an adult Tier III sex offender.  The court stayed the adult portion of the sentence pending P.C.'s successful completion of the juvenile portion of his sentence.  For the traditional

juvenile portion, the court ordered P.C. to serve a minimum of one year up to his 21st birthday in the Department of Youth Services ("DYS") on each of the three rape counts and a minimum of six months up to his 21st birthday in the DYS on each of the three gross sexual imposition counts, all to be served concurrently with each other, and further classified him as a Tier III juvenile offender registrant.

*In re: P.C.*, 9th Dist. Medina No. 18CA0019-M, 2019-Ohio-2603, ¶ 2-3 ("*In re: P.C. I*"). P.C. appealed, and this Court vacated the juvenile and adult sexual offender classifications, determining that pursuant to R.C. 2152.83(A)(1) the juvenile court must classify the juvenile at the time of the juvenile's release from a secured facility.

{¶3} P.C. was released from the DYS in August 2019. Following a sexual offender classification hearing in November 2019, the juvenile court requested the parties submit supplemental briefing on whether the court had authority to classify P.C. as an adult Tier III sexual offender as a part of his serious youthful offender stayed adult sentence. After the parties briefed the issue, the trial court issued a judgment entry which, inter alia, classified P.C. as a juvenile Tier III sexual offender as a part of a traditional juvenile sentence and as an adult Tier III sexual offender as a part of a stayed adult sentence. The trial court read those findings and conclusions to P.C. at a hearing in open court that same day.

{¶4} P.C. filed this appeal, raising three assignments of error for our review.

II.

**Assignment of Error I**

**The juvenile court did not have the authority to classify P.C. as an adult tier III registrant because the imposition of an adult classification pursuant to [R.C. 2950] is not authorized punishment under R.C. 2152.13. [ ].**

{¶5} After the parties briefed the issue, the juvenile court determined that P.C. would be classified as an adult tier III sexual offender as a part of his serious youthful offender stayed adult

sentence. In his first assignment of error, P.C. contends that the trial court did not have authority to do so. We disagree.

{¶6} The juvenile court found P.C. to be a serious youthful offender pursuant to R.C. 2152.13. Pursuant to the statute, if, after considering the factors set forth in R.C. 2152.13(D)(2)(a)(i), "the court finds that a juvenile disposition alone would be inadequate to meet the statutorily enunciated purposes of juvenile disposition, the court may impose an adult sentence, albeit stayed, on the child[.]" *State v. D.H.*, 120 Ohio St.3d 540, 544, 2009-Ohio-9, ¶ 25. When imposing such a sentence, a juvenile court "may impose upon the child a sentence available for the violation, as if the child were an adult, under [R.C. Chapter 2929], except that the juvenile court shall not impose on the child a sentence of death or life imprisonment without parole. R.C. 2152.13(D)(2)(a)(i). The Supreme Court of Ohio has explained the serious youthful offender statutory scheme as follows:

> A juvenile charged as a potential serious youthful offender does not face bindover to an adult court; the case remains in the juvenile court. Under R.C. 2152.11(A), a juvenile defendant who commits certain acts is eligible for "a more restrictive disposition." That "more restricted disposition" is a "serious youthful offender" disposition and includes what is known as a blended sentence—a traditional juvenile disposition coupled with the imposition of a stayed adult sentence. R.C. 2152.13. The adult sentence remains stayed unless the juvenile fails to successfully complete his or her traditional juvenile disposition. R.C. 2152.13(D)(2)(a)(iii). Theoretically, the threat of the imposition of an adult sentence encourages a juvenile's cooperation in his own rehabilitation, functioning as both carrot and stick.

*D.H.* at ¶ 18. Pursuant to R.C. 2152.13(D)(3), a child upon whom a serious youthful offender dispositional sentence has been imposed has a right to appeal the adult portion of the serious youthful offender dispositional sentence as if the adult portion were not stayed. *See In re T.D.R.*, 11th Dist. Lake No. 2014-L-109, 2015-Ohio-3541, ¶ 22.

{¶7} P.C. was released from the DYS in August 2019. During his sexual offender classification hearing in November 2019, P.C. asserted that the trial court did not have authority to classify a child as an adult sexual offender registrant as part of the stayed adult sentence of his serious youthful offender dispositional sentence. P.C. argued R.C. 2152.13 only authorized the juvenile court to impose a sentence pursuant to R.C. 2929, et seq, and Chapter 2929 of the Revised Code did not grant any courts the authority to classify offenders. P.C. maintained that a common pleas court's authority to classify adults found guilty of a sexually oriented offense as sexual offender registrants stemmed only from R.C. 2950. P.C. further maintained that a juvenile court's authority to classify a juvenile, regardless of whether the juvenile had been adjudicated an SYO, as a sexual offender stemmed only from R.C. 2152.82 through R.C. 2152.85. The juvenile court requested the parties to submit post-hearing briefs addressing the issue. Although the juvenile court subsequently issued an order classifying P.C. as an adult Tier III sexual offender as part of his stayed adult sentence, the court did not specifically address the merits of either parties' brief.

{¶8} On appeal, P.C. first appears to argue that the Supreme Court of Ohio's holding in *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, bars juvenile courts from including an adult Tier III sex offender classification as a part of a serious youthful offender's stayed adult sentence. P.C.'s reliance on *In re C.P.* is misplaced. In *In re C.P.*, the Supreme Court of Ohio held that R.C. 2152.86 was unconstitutional "[t]o the extent that it imposes *automatic*, lifelong registration and notification requirements on juvenile sex offenders tried within the juvenile system[.]" (Emphasis added.) *Id.* at syllabus. Because the juvenile court did not *automatically* adjudicate P.C. as a juvenile lifetime registrant, the holding in *In re C.P.* is not applicable to this assignment of error.

{¶9} P.C. next argues that when imposing a dispositional sentence on a serious youthful offender, a juvenile court is limited to the sentence options available under Chapter 2929 of the

Revised Code pursuant to the SYO statute, and that Chapter 2929 does not grant any court the authority to impose an adult sexual offender classification. In response, the State does not address P.C.'s argument concerning the SYO statute and Chapter 2929, but instead asserts that R.C. 2950.01(G)(1)(a) requires that an adult sentence for a rape conviction under R.C. 2907.02 include a mandatory tier III sex offender registration. The State further asserts that Chapter 2950 is applicable to juveniles through R.C. 2152.191.

{¶10} In this case, P.C. entered a plea of admit and guilty to three counts of rape, in violation of R.C. 2907.02(A)(1)(b), which specified that the victim was under ten years old, and three counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4). All six counts of the indictment included SYO specifications.

{¶11} R.C. 2152.13 (the "SYO statute") grants a juvenile court authority to impose an adult sentence on a child adjudicated a serious youthful offender. R.C. 2152.13(D)(2)(a)(i) provides,[1]

> If the juvenile court on the record makes a finding that, given the nature and circumstances of the violation and the history of the child, the length of time, level of security, and types of programming and resources available in the juvenile system alone are not adequate to provide the juvenile court with a reasonable expectation that the purposes set forth in [R.C. 2152.01] will be met, *the juvenile court may impose upon the child a sentence available for the violation, as if the child were an adult, under [R.C. Chapter 2929]*, except that the juvenile court shall not impose on the child a sentence of death or life imprisonment without parole.

(Emphasis added.)

---

[1] In his merit brief, P.C. cites to R.C. 2152.13(D)(1)(a). That statute applies when a child is adjudicated a delinquent child for committing an act under circumstances that *require* the juvenile court to impose a serious youthful offender disposition sentence. In this case, the juvenile court stated that it adjudicated P.C. as a delinquent child for committing an act under circumstances *that allowed, but did not require* the court to impose a serious youthful offender dispositional sentence. Accordingly, the trial court imposed P.C.'s serious youthful offender sentence pursuant subsection (D)(2)(a)(i) of R.C. 2152.13. Neither the State nor P.C. objected to this finding below nor do they raise it as an issue on appeal. Nonetheless, the language P.C. cites from subsection (D)(1)(a) in support of his argument mirrors the language in subsection (D)(2)(a)(i).

{¶12} In addition to other sentencing guidelines in Chapter 2929 a court is required, pursuant to R.C. 2929.19(B)(3)(a)(iii), to include in an offender's sentence a statement that an offender is a tier III sex offender/child-victim offender if the offender is being sentenced "for a child-victim oriented offense, and the offender is a tier III sex offender/child-victim offender relative to that offense." R.C. 2950.01(G)(1)(a), expressly states that "[a] sex offender who is convicted of, pleads guilty to, has been convicted of, or has pleaded guilty to * * * [a] violation of [R.C. 2907.02] is a tier III sex offender/child victim offender.

{¶13} Thus, contrary to P.C.'s assertion, Chapter 2929 not only includes provisions expressly addressing the imposition of a sexual offender classification on an offender, those provisions *require* a court to impose a tier III classification when sentencing an offender for a violation of R.C. 2907.02(A)(1). Because the SYO statute allows a juvenile court to impose upon an SYO the adult sentence available under Chapter 2929 for a violation of R.C. 2907.02(A)(1)(b), we conclude that the juvenile court had authority to classify P.C. as an adult tier III sex offender as part of his stayed adult sentence. *See* 2152.13(D)(2)(a)(i); R.C. 2929.19(B)(3)(a)(iii); R.C. 2907.02(A)(1); R.C. 2950.01(G)(1)(a).

{¶14} P.C.'s first assignment of error is overruled.

### Assignment of Error II

**The juvenile court abused its discretion by admitting the Summit Psychological Report into evidence and considering it when the report's author did not come to P.C.'s classification hearing. [ ].**

{¶15} In his second assignment of error, P.C. contends that the juvenile court erred and abused its discretion by admitting into evidence and considering a report from Summit Psychological Associates because (1) the report was unfairly prejudicial pursuant to Evid.R.

403(A); (2) the report's writer was not qualified as an expert pursuant to Evid.R. 702; and (3) the report was not authenticated pursuant to Evid.R. 901.

{¶16} In its response, the State contends that because the Rules of Evidence do not apply to sexual offender classification hearings, P.C.'s assignment of error should be overruled. We agree.

{¶17} The Ohio Rules of Evidence are limited in scope. Evid.R. 101(C), states, in pertinent part:

> These rules (other than with respect to privileges) do not apply in the following situations:
>
> * * *
>
> (3) *Miscellaneous Criminal Proceedings.* Proceedings for extradition or rendition of fugitives; sentencing; granting or revoking probation; proceedings with respect to community control sanctions; issuance of warrants for arrest, criminal summonses and search warrants; and proceedings with respect to release on bail or otherwise.
>
> * * *
>
> (6) *Other Rules.* Proceedings in which other rules prescribed by the Supreme Court govern matters relating to evidence.

{¶18} Courts have long recognized that the rules of evidence do not apply to adult sexual offender classification hearings. *See State v. Cook*, 83 Ohio St.3d 404, 425 (1998). This is because such hearings are "'similar to sentencing or probation hearings where it is well settled that the Rules of Evidence do not strictly apply.'" *State v. Hassenruck*, 9th Dist. Lorain No. 17CA011230, 2018-Ohio-4546, ¶ 19, quoting *State v. Wright*, 9th Dist. Summit No. 18941, 1999 WL 420377, *2 (June 23, 1999), quoting *Cook* at 425.

{¶19} As in the context of an adult sentencing hearing, the applicability of the Rules of Evidence is limited at the dispositional stage of juvenile court proceedings. Indeed, the juvenile

rules expressly allow a juvenile court to "admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence" during a dispositional hearing unless it concerns a motion for permanent custody. Juv.R. 34(B)(2); *see* Evid.R. 101(C)(6). A juvenile sexual offender classification hearing is akin to a dispositional hearing in the juvenile context much like an adult sexual offender classification hearing is akin to an adult sentencing hearing. *See Cook*, 83 Ohio St.3d at 425. The determination as to how a juvenile will be classified does not occur until after a child has already been adjudicated delinquent for committing a sexually oriented offense. *See* R.C.2152.83(A)(1); *see also Cook* at 425 ("A determination hearing does not occur until after the offender has been convicted of the underlying offense. Further, the determination hearing is intended to determine the offender's status, not to determine the guilt or innocence of the offender."). Therefore, we conclude that the Rules of Evidence do not strictly apply to a juvenile sexual offender classification hearing. *See id.*

{¶20} In his reply brief, P.C. argues for the first time that the report at issue was not reliable and that the writer of the report was not credible. Despite our conclusion that the Rules of Evidence to do not strictly apply to sex offender classification hearings, we recognize that evidence admitted during such hearings must still be reliable. *See State v. Miller*, 8th Dist. Cuyahoga No. 104747, 2017-Ohio-1554, ¶ 26, compiling cases. However, this Court has long held that a party cannot raise new issues for consideration in his reply brief, and that a reply brief is merely an opportunity to respond to the brief of the appellee. *State v. Caldwell*, 9th Dist. Summit No. 26306, 2013-Ohio-1417, ¶ 9, quoting *Willett v. Willett*, 9th Dist. Summit No. 22167, 2005-Ohio-342, ¶ 8, fn. 1. Because the second assignment of error in P.C.'s merit brief only asserts that the trial court erred by admitting the report in violation of the Ohio Rules of Evidence, we must limit our review accordingly.

{¶21} P.C.'s second assignment of error is overruled.

### Assignment of Error III

**The juvenile court abused its discretion when it viewed P.C.'s case through an adultified (sic.) lens, disregarded the testimony of the professionals who testified about P.C.'s progress, and classified him as a tier III juvenile sex offender. [ ].**

{¶22} In his third assignment of error, P.C. contends that the juvenile court abused its discretion by classifying P.C. a tier III juvenile sex offender because the court "disregarded all of the positive testimony given about P.C." and its decision is "not consistent with or supported by the totality of the record." Upon review of the record, we cannot say that the trial court abused its discretion in this case.

{¶23} In this case, the court classified P.C. as a juvenile tier III sex offender registrant pursuant to R.C. 2152.83 as part of his traditional juvenile disposition. The definition of a "tier III sex offender" includes "[a] sex offender who is adjudicated a delinquent child for committing or has been adjudicated a delinquent child for committing any sexually oriented offense and who a juvenile court, pursuant to section 2152.82, 2152.83, 2152.84, or 2152.85 of the Revised Code, classifies a tier III sex offender/child-victim offender relative to the offense." R.C. 2950.01(G)(3). Prior to issuing the order classifying a child as a juvenile offender registrant, the court is required to hold a hearing pursuant to R.C. 2152.831 to determine whether the child is a tier I, tier II, or tier III sex offender. R.C. 2152.83(A)(2); R.C. 2152.831(A). A juvenile court has discretion to determine a juvenile offender registrant's classification tier. *In re C.P.*, 2012-Ohio-1446, ¶ 20, citing R.C. 2152.82(B). An abuse of discretion connotes more than an error of law or judgment; it implies that the juvenile court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶24} In making the decision whether a delinquent child should be classified as a juvenile offender registrant, a judge must consider all relevant factors. Pursuant to R.C. 2152.83(D), those factors include, but are not limited to:

(1) The nature of the sexually oriented offense or the child-victim oriented offense committed by the child;

(2) Whether the child has shown any genuine remorse or compunction for the offense;

(3) The public interest and safety;

(4) The factors set forth in division (K) of section 2950.11 of the Revised Code, provided that references in the factors as set forth in that division to "the offender" shall be construed for purposes of this division to be references to "the delinquent child;"

(5) The factors set forth in divisions (B) and (C) of section 2929.12 of the Revised Code as those factors apply regarding the delinquent child, the offense, and the victim;

(6) The results of any treatment provided to the child and of any follow-up professional assessment of the child.

Relevant to R.C. 2152.83(D)(4), the factors set for in R.C. 2950.11(K) include

(1) The [delinquent child]'s age;

(2) The [delinquent child]'s prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexually oriented offenses or child-victim oriented offenses;

(3) The age of the victim of the sexually oriented offense or child-victim oriented offense the [delinquent child] committed;

(4) Whether the sexually oriented offense or child-victim oriented offense the [delinquent child] committed involved multiple victims;

(5) Whether the [delinquent child] used drugs or alcohol to impair the victim of the sexually oriented offense or child-victim oriented offense the [delinquent child] committed or to prevent the victim from resisting;

(6) If the [delinquent child] previously has been convicted of, pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an

adult would be a criminal offense, whether the [delinquent child] completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sexually oriented offense or a child-victim oriented offense, whether the * * * delinquent child participated in available programs for sex offenders or child-victim offenders;

(7) Any mental illness or mental disability of the [delinquent child];

(8) The nature of the [delinquent child]'s sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense the [delinquent child] committed or the nature of the [delinquent child]'s interaction in a sexual context with the victim of the child-victim oriented offense the [delinquent child] committed, whichever is applicable, and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;

(9) Whether the [delinquent child], during the commission of the sexually oriented offense or child-victim oriented offense the [delinquent child] committed, displayed cruelty or made one or more threats of cruelty;

(10) Any additional behavioral characteristics that contribute to the [delinquent child]'s conduct.

{¶25} In this case, the juvenile court made its decision to classify P.C. as a tier III sex offender after "consider[ing] multiple factors including:

the evidence in the this case; the nature of the offense; the effect of the offense on the victim; the victim's impact statement; [P.C.]'s sex offender evaluations and reports, and the recommendations therein; the likelihood for recidivism; the participation and completion, or lack of participation and completion of sex offender treatment; the participation and completion, or lack of participation and completion of any other treatment and recommendations based upon the evaluations performed; [P.C.]'s prior court record; arguments of counsel and all other relevant information[.]

{¶26} On appeal, P.C. asserts that the court "honed in on two pieces of evidence in classifying P.C., and in doing so, it disregarded all of the positive testimony given about P.C. at his classification hearing." The first "piece of evidence" on which P.C. argues the trial court "overly relied," is the fact that he had not begun sexual offender treatment after being released from DYS. In its journal entry, the court noted that despite the necessity for follow-up treatment—

stressed in both the report of Dr. Gazley submitted by P.C., the report from Summit Psychological submitted by the State, and the testimony of the DYS psychiatry assistant presented at the hearing—it was "uncontested and unexplained" as to why P.C. had not completed any follow-up treatment in the three months since he had been released from DYS. The juvenile court stated that it found "it troubling that [P.C.], who is on parole and potentially subject to a SYO disposition/imposition of sentence, had not followed up with any sex offender treatment since his release[.]"

{¶27} P.C. asserts that the trial court should have considered that P.C. did not begin this treatment because "he was advised by his parole officer to wait for the results of his sex offender classification hearing and DYS funding to fall in place." A review of the transcript, however, supports the trial court's finding that P.C.'s failure to do follow-up treatment was not explained at the hearing. Notably, P.C. supports this contention in his brief by pointing to a statement made by his counsel at a separate hearing subsequent to the evidentiary hearing and after the trial court read its findings and conclusions into the record. The statement asserted that P.C.'s counsel had explained in chambers prior to the hearing that the reason P.C. had not obtained treatment right away was "because of funding reasons and, also, was because he was advised to wait until the results of this hearing." Contrary to P.C.'s argument on appeal, P.C.'s counsel's statement did not indicate what the alleged "funding reasons" were or who had allegedly advised P.C. to wait to do follow-up treatment. Regardless, despite the presence of P.C.'s parole officer at the evidentiary hearing, no evidence was presented during the hearing to support these contentions, nor was any evidence proffered to support P.C.'s counsel's statement after the trial court had presented its findings and conclusions of law at the subsequent hearing.

{¶28} The second "piece of evidence" on which P.C. argues the juvenile court overly relied is the sex offender evaluation prepared for the court by Summit Psychological Associates. P.C. asserts that this report was not admissible under the evidentiary rules and "did not fall in line with the reports done at DYS or Dr. Gazley's report." P.C. also points to his good behavior and successful completion of sex offender treatment while at DYS and asserts that, prior to this case, he had never been charged with or adjudicated of any offenses "despite his troubled childhood." Because we determined in assignment of error two that the Ohio Rules of Evidence do not strictly apply to juvenile sex offender classification hearings, we reject P.C.'s reasserted argument in this assignment of error that the juvenile court erred in considering Summit Psychological Associates' report on that basis. We will, however, consider P.C.'s argument that the trial court overly relied on that report.

{¶29} In its journal entry, prior to making its determination, the juvenile court explains the evidence presented at the hearing. The court notes that P.C. had undergone juvenile sexual offender evaluations with both Summit Psychological Associates and Dr. Gazley at the Forensic Psychiatric Center of Northeast Ohio, and that the reports from both had been received and reviewed by the court. The State did not present any witnesses at the hearing and relied on the report of Summit Psychological Associates. Regarding this report, the court states that it will "not consider the opinion of the writer on the ultimate issue, but would admit the report and other findings therein, in as much as the same were relied upon by other witnesses in their preparation[.]" During the evidentiary hearing, P.C. presented testimony from Scott Spohn, a psychiatry assistant with the Department of Youth Services ("DYS"); M.C., P.C.'s father; and Dr. Thomas G. Gazley, a psychologist at the Forensic Psychiatric Center of Northeast Ohio, who prepared a written report submitted to the court.

{¶30} The court's journal entry first discusses Mr. Spohn's testimony. Mr. Spohn testified he is a psychiatry assistant and worked with P.C. while P.C. was in DYS custody for approximately 18 months, having 40 to 50 interactions with him. The court notes that Mr. Spohn testified he does not have any specific sexual offender program training and works "under psychiatrist license and supervision." Mr. Spohn indicated P.C. had been screened using the Juvenile Sex Offender Assessment Protocol II (J-SOAP-II). The court notes in its entry that the J-SOAP II is a guide, not an empirical tool, and that is a tool designed for treatment rather than as a predictor of the likelihood to reoffend.

{¶31} The court's journal entry acknowledges Mr. Spohn's testimony that P.C. dropped from a scaled score of 79 to 21 on the J-SOAP-II. However, the court noted that the original score of 79 was "reflected by Summit Psychological and not Mr. Spohn's initial testing." The court then states that "no explanation was proffered by any party to the court for the significant difference in initial scores between the two test giver results." Though the court did not indicate the score of the first test administered by DYS, a review of the record shows a score of 50. The court also notes Mr. Spohn's testimony that P.C.'s progress in the sex offender therapy offered at DYS took longer than the best-case scenario, attributing this to P.C.'s initial trust issues, an unwillingness to drop self-defensive protective mechanisms, struggles with peer interaction, and bottled up emotions. Mr. Spohn also testified that P.C. eventually proceed through the behavior levels designated by DYS.

{¶32} The court then explained Mr. Spohn's testimony regarding P.C.'s treatment at DYS. Mr. Spohn indicated that P.C. needed to address his social skills, guilt, empathy, and remorse, and develop strategies to manage his risk factors. The treatment program is broken into two phases. Phase I is designed to help an offender break down the series of events leading to the

offense and discover errors in thought. Mr. Spohn indicated that, during phase I, P.C. struggled with protecting himself from his emotions, the premise that he was a victim, and a lack of responsibility for his actions. The court then notes that P.C. "apparently progressed sufficiently to move to Phase II where he had to present himself to a panel (constituted of whom the court was not apprised) who apparently recommended his completion and release to parole." Mr. Spohn indicated that P.C. should continue sex offender treatment, engage in follow-up counselling for self-esteem, and continue to work on developing healthy relationships. The juvenile court notes in its entry that Mr. Spohn was unaware that P.C. had not sought any follow-up sex offender treatment as of the date of the hearing.

{¶33} The juvenile court's journal entry then briefly addresses P.C.'s father's testimony. P.C.'s father stated that P.C. resides with him, and that P.C. is employed and has obtained is GED. His father also indicated that he monitors P.C.'s social media and internet usage. The court then recognized P.C.'s father's expression of hope and support for his son.

{¶34} Next, the juvenile court's journal entry explains the testimony and accompanying report of Dr. Gazley. Dr. Gazley testified that he performed various psychological tests and assessments on P.C., conducted interviews, and reviewed records. Dr. Gazley opined that P.C.'s sexual gratification was in part to relieve sadness and depression, and found that P.C. suffered from depression. Dr. Gazley opined that P.C.'s overall risk for sex offense recidivism is below the base rate for juvenile recidivism. Dr. Gazley also opined that although P.C. met the DSM-V criteria for pedophilia, paraphilic incest, and voyeurism, he believed they were not appropriate diagnoses because P.C. was not expressing arousal to such events per his results on the Abel test, which assesses sexual interest and arousal patterns. The juvenile court noted in its entry that Dr. Gazley stated this opinion despite the facts of this case demonstrating that P.C. had openly

offended on his four-year-old niece, had an on-going incestuous relationship with his older sister for years, and admitted to peeping on his female siblings. Finally, the court recognized that Dr. Gazley opined P.C. needed to continue outpatient sex offender treatment regardless of the progress he made at DYS. The court quoted Dr. Gazley's report wherein he opines that P.C.'s "participation in sex offender treatment would significantly reduce risk for future recidivism."

{¶35} The court then observed that "[r]egardless of his preferred interest/arousal, [P.C.] nonetheless committed offenses and engaged in sexual acts that did not apparently register arousal on the Abel test." In its journal entry, the court stated that it did not receive an adequate explanation as to how or why this could occur, but was left with the notion that "'sex is comforting' for depression." The court found Dr. Gazley's assessment that "sex is comforting" combined with the lack of explanation regarding P.C.'s opportunistic sexual actions troubling "inasmuch as it leaves everyone to have concerns of being offended upon by [P.C.], as long as it would make him feel good."

{¶36} The court then noted that, contrary to Dr. Gazley's opinion, the report from Summit Psychological Associates indicated that P.C. was a high risk for future offending based upon the presence of static and dynamic risk factors and deeply ingrained paraphilic disorders involving deviant sexual attraction. The report also opined that P.C. was unable to identify triggers and high risks for offending which is a prerequisite in relapse prevention planning. Consequently, the writer of the report opined that P.C. was in need of ongoing sex offender specific treatment on an outpatient basis despite his completion of sex offender treatment at DYS. The report also pronounced that P.C. should not have access to children or minors, pornography, or unmonitored internet access.

{¶37} The juvenile court stated that it was not unexpected that Dr. Gazley's report and the report from Summit Psychological Associates would differ in various interpretations, but noted that "what both stress, including Mr. Spohn from DYS, is the necessity for follow up treatment." The juvenile court found it troubling that P.C. had not engaged in any treatment in the three months since he had been released from DYS custody in light of these recommendations and the fact that P.C. was on parole and potentially subject to the imposition of a SYO adult sentence. The court further noted that P.C.'s failure to seek follow-up treatment was not contested or explained during the hearing.

{¶38} Based on our review of the trial court's journal entry, we cannot conclude that P.C. has shown that the court relied too heavily on the report from Summit Psychological Associates. The court's review of that document is limited to a single paragraph explaining how the writer's opinion differed from that of Dr. Gazley and why. Instead, the court appears to have been most concerned by P.C.'s prior opportunistic sexual actions apparently committed in order to relieve his ongoing depression and the fact that P.C. had failed to participate in any follow-up sexual offender treatment after leaving DYS custody—a recommendation made not only by Summit Psychological Associates, but also by Dr. Gazley, and Mr. Spohn. We conclude, therefore, that P.C. has not shown that the juvenile court's determination that he should be classified as a juvenile tier III sex offender is unreasonable, arbitrary, or unconscionable. *See Blakemore*, 5 Ohio St.3d at 219.

{¶39} P.C.'s third assignment or error is overruled.

### III.

{¶40} P.C.'s assignments of error are overruled. The judgment of the Medina County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CALLAHAN, P. J.
TEODOSIO, J.
CONCUR.


APPEARANCES:

LAUREN HAMMERSMITH, Assistant State Public Defender, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.